# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 23, 2007         Decided March 23, 2007

No. 05-7181

ELLIPSO, INC.,
APPELLEE

v.

JOHN B. MANN AND
MANN TECHNOLOGIES,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01186)

*David P. Durbin* argued the cause for appellants. With him on the briefs was *Thomas A. Mauro*.

*Natalie O. Ludaway* argued the cause for appellee Ellipso, Inc. With her on the brief was *Matthew H. Goodman*.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This appeal challenges a

preliminary injunction to preserve assets for a potential judgment against the appellants. In the underlying dispute, Ellipso, Inc. ("Ellipso") claims that appellants Mann Technologies (individually "Mann Technologies") and its managing partner, John Mann, (referred to here jointly as "Mann Tech") fraudulently induced Ellipso to enter a loan agreement secured by shares Ellipso held in another company. In the matter on appeal before us, Ellipso alleged that Mann Tech was selling those shares and diverting the proceeds, and persuaded the district court to freeze those assets. Mann Tech asks us to set aside the injunction, arguing that the district court erred when it held that Ellipso had demonstrated a substantial likelihood of success on the merits of its underlying fraud claim, that Ellipso would suffer irreparable harm absent the injunction, and that Mann Tech would not be injured by the injunction. We affirm the district court's order because the appellants have not shown that the district court abused its discretion.

## I.

On June 14, 2005, Ellipso, a telecommunications company that specializes in satellite communications products for cellular phone companies, filed a complaint against appellants John B. Mann and Mann Tech, and against Robert Patterson, Consulting Management, Ltd., and Registry Solutions Co.[1] Ellipso claimed, among other things, that it was fraudulently induced to enter a loan agreement with the appellants and sought various remedies including rescission of the loan. In 2002, Ellipso was struggling financially and hired Robert Patterson to secure financing from investors, which

---

[1] Neither Patterson, Consulting Management, nor Registry Solutions have appealed the grant of the preliminary injunction.

Patterson did.  Patterson put together a deal in which Mann Tech loaned Ellipso $90,000, secured by more than 492,000 shares of publicly-traded ICO Global Communications Holding Ltd. Stock ("ICOHA shares") that Ellipso held.  At the time of the loan agreement in January 2004, the ICOHA shares were valued at about $180,000, twice the amount of the loan.  While he was acting as Ellipso's agent in securing the financing from Mann Tech, Patterson had a financial interest in Mann Tech—unknown to Ellipso—and stood to benefit from the loan. According to Ellipso, Patterson presented the loan as Ellipso's only feasible financing option, and Ellipso relied on Patterson's expertise when agreeing to it.  Ellipso claims that Patterson took advantage of his insider's knowledge of Ellipso's precarious financial condition to benefit  himself by persuading Ellipso to enter the loan agreement.  The month following the loan agreement, Patterson strengthened his financial interest in Mann Technologies when he and John Mann incorporated Mann Technologies in Nevada.  According to Ellipso, Patterson continued to take advantage of his dual interests in Ellipso and Mann Technologies to harm Ellipso and benefit himself by persuading Ellipso to transfer title and possession of the ICOHA shares to Mann Technologies in August 2004. A month later, Patterson, on behalf of Mann Technologies, and Ellipso executed a joint sales order permitting the sale of 25,000 of those shares.  Sometime thereafter (the record is not clear) Mann Tech sold off nearly another 453,000 ICOHA shares and transferred some of the resulting proceeds to other accounts (again, the record is not clear as to the precise amounts or accounts).  Mann Tech counters that it was entitled to sell the shares because their value had fallen below $10,000 and Ellipso had failed to make a single payment on the loan, both grounds for default under the agreement. When Ellipso moved for a preliminary injunction in August 2005, the price of ICOHA had rebounded dramatically, and the total market value of the shares that Ellipso pledged as collateral exceeded $2,500,000.

4

Ellipso moved for a preliminary injunction to ensure that the remaining ICOHA shares held by Mann Technologies and the proceeds from those that had been sold would be protected while Ellipso pursued its claims against Mann Tech and Patterson. Ellipso argued that only an injunction freezing Mann Technologies' assets would guarantee satisfaction of any judgment on its claims. The district court agreed, concluding that (1) Ellipso had shown a likelihood of success on the merits of its fraud claim because Patterson had not disclosed his dual role to Ellipso, *see Ellipso, Inc. v. Mann*, No. 05-cv-1186, slip op. at 5-6 (D.D.C. Nov. 2, 2005) ("*Ellipso I*"); (2) there was a likely threat of irreparable injury to Ellipso from Mann Tech's further sale of the ICOHA shares because they were Mann Technologies' only substantial assets, *see id.* at 4; (3) the balance of hardships favored Ellipso because without an injunction Ellipso might not be made whole and an injunction would harm no business interests of Mann Technologies, which would be allowed to hold on to the shares, *see id.* at 6-7; and (4) the public interest in preventing fraud favored granting an injunction, *see id.* at 7. Mann Tech filed a motion for reconsideration of the preliminary injunction arguing that new evidence showed that Ellipso knew of Patterson's dual role and with that knowledge actually affirmed the loan agreement by continuing to act under its terms, eliminating rescission as a remedy. The district court rejected Mann Tech's motion for reconsideration and held that the "purportedly new facts" would not change its conclusion that Ellipso had demonstrated a substantial likelihood of success on the merits of its fraud claim. *Ellipso v. Mann*, No. 05-civ-1186, slip op. at 3 (D.D.C. Nov. 14, 2005) ("*Ellipso II*"). Mann Tech timely appealed to this Court.

**II.**

"We review the district court's weighing of the preliminary injunction factors under the 'abuse of discretion'

standard." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998) (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 614 (D.C. Cir.1992)). We review factual determinations "under the clearly erroneous standard," while questions of law are reviewed "essentially *de novo*." *Id.* (internal quotation marks and citations omitted). When deciding whether to grant a preliminary injunction, the district court must examine whether "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by the injunction." *Id.* at 1317-18 (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). A court must balance these factors, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.* at 1318 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

Mann Tech challenges the district court's determination that Ellipso has shown a substantial likelihood of success on the merits of its fraud claim, that Ellipso would be irreparably harmed without the injunction freezing Mann Technologies' assets, and that Mann Technologies would not be harmed by the injunction. We examine these arguments in turn and find each lacks merit.

As to the merits of the fraud claim, Mann Tech argues first that Ellipso failed to prove, as is required for fraud, that it reasonably relied on Patterson to accept Mann Tech's loan. *See, e.g.*, *Alicke v. MCI Commc'n Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). Mann Tech alleges that Ellipso had been willing to accept a previous similar loan offered by another prospective investor (Argyll Equities LLC). Because Ellipso was willing to

accept this previous similar loan, so the argument goes, the district court was mistaken to conclude that Ellipso relied on Patterson to accept a substantially similar loan from Mann Tech. Mann Tech also argues that Ellipso could not have reasonably relied on Patterson because it knew of his prior felony theft conviction and disbarment. We need not consider either argument because "[i]t is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1085 (D.C. Cir. 1984) (citations omitted). Mann Tech failed to raise either reliance argument in its opposition to Ellipso's motion for a preliminary injunction, at the district court's hearing on the injunction, or in its motion for reconsideration. They were both raised for the first time on appeal. The district court clearly did not err in failing to consider arguments that Mann Tech failed to present. Although Mann Tech did note in its opposition to a preliminary injunction that it was disputed when Ellipso became aware of Patterson's criminal history, it did not argue that reliance on Patterson would have been unreasonable. Instead, Mann Tech's argument about the likelihood of success on the merits of the fraud claim focused on whether Ellipso could prove the facts necessary to justify rescission. *See* Opposition of Defendants John B. Mann and Mann Technologies, LLC to the Plaintiff's Motion for Preliminary Injunction at 4-5, No. 05-civ-1186 (D.D.C. Sept. 27, 2005). Even had Mann Tech preserved its reliance arguments, it would not be entitled to the relief it seeks because it is by no means apparent from the record what effect, if any, the Argyll loan offer had on Ellipso's reliance on Patterson or when Ellipso in fact discovered Patterson's conviction and disbarment.

Mann Tech argues next that Ellipso did not show a likelihood of success on its fraud claim because it had, in fact, affirmed the loan agreement with full knowledge of Patterson's dual roles with Ellipso and Mann Technologies. Mann Tech is

correct that if Ellipso continued to perform under the contract after learning of Patterson's conflict, Ellipso cannot then seek rescission of the contract:

> Where a party to an executed contract discovers a material misrepresentation made in the execution of the contract, that party may elect one of two mutually exclusive remedies. He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted.

*Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001) (quoting *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 840 (D.C. 1983)). If the fraud victim "affirms the contract through continued performance, that party is precluded from seeking rescission." *Id.* (citing *Dresser*, 465 A.2d at 840 nn.16 & 17).

Mann Tech argues that the August 2004 transfer of the ICOHA shares and the September 2004 sale of 25,000 of them were acts affirming the loan agreement because Ellipso agreed to them with full knowledge of Patterson's interest in Mann Technologies. It relies on two documents to make its case. First, Mann Tech points to the September 2004 joint sales order signed by Ellipso's chief executive officer, David Castiel, for Ellipso and by Patterson for Mann Technologies. Mann Tech argues that Patterson's signature for Mann Technologies gave Ellipso notice of his dual role. The sales order, however, is hardly unequivocal evidence that Ellipso knew of Patterson's financial interest in Mann Technologies, and it says nothing about what Ellipso knew about Patterson's conflict in January 2004, when Ellipso entered the loan agreement with Mann Tech. Patterson brokered the original loan agreement for Mann at Ellipso's direction, and it was not unreasonable to assume that

Mann Tech would permit Patterson to act as its agent in any future transactions regarding the loan. Second, Mann Tech relies on an October 20, 2004 email from Ellipso's Castiel to Patterson, which it argues shows that Ellipso knew of Patterson's dual role, perhaps as early as June 2004, and did not object: "My understanding," Castiel wrote to Patterson, "was that you were 'covered' as you indicated to me starting in June through a variety of sources, including . . . TRSC/Mann Tech (*of which you are a substantial holder as well*) . . . ." Email from David Castiel, Chief Executive Officer, Ellipso, to Robert Patterson (Oct. 20, 2004) (emphasis added). There are, however, two equally plausible readings of this email depending on how one interprets the phrase "starting in June": (1) if the phrase refers to when Castiel became aware of Patterson's interest in Mann Technologies, it could reasonably be read to mean that Ellipso knew in June 2004, two months before it is alleged to have affirmed the agreement, that Patterson was a principal in Mann Technologies; or (2) if the phrase refers to when Patterson gained a financial interest in Mann Technologies, it could be reasonably read to mean that Ellipso found out at some later date (no later than October 20, 2004) that Patterson had been a principal in Mann Technologies *since* June 2004. This second reading is critical because it undermines appellants' argument that the August 2004 share transfer and September 2004 joint sale were done with knowledge of Patterson's dual role. Under this interpretation, therefore, these actions do not affirm the loan agreement because each was made before Ellipso had learned of Patterson's dual role and fraud. It is the appellants' burden to show that Ellipso knew of Patterson's dual roles before the actions Mann Tech argues affirmed the loan agreement. It has failed to do so. The district court was not clearly erroneous in so concluding.

In considering Mann Tech's motion for reconsideration of the grant of the preliminary injunction, the district court

limited its analysis to what Ellipso knew about Patterson's interest in Mann Technologies at the time of the loan agreement*, see Ellipso II* at 3 (noting that "purportedly new facts . . . fail to show that Ellipso knew of Patterson's dual role at the time of the negotiation and execution of the loan agreement"), and did not expressly address whether Ellipso knew of Patterson's dual roles at the time of the August 2004 share transfer and September 2004 joint sale, the lynchpin of Mann Tech's argument that Ellipso affirmed the loan agreement. The district court's failure to address the affirmation argument directly makes our task more difficult. Given the narrow confines for our review of a preliminary injunction, a statement by the district court that the proffered evidence was insufficient to support Mann Tech's theory that Ellipso affirmed the loan agreement with knowledge of Patterson's dual roles would have made our task more straightforward. The district court did, however, implicitly find in its decision to grant the preliminary injunction that Ellipso had not affirmed the contract when it concluded that the "defendants are unable to rebut that plaintiff did not know at the time of the negotiation and execution of the loan agreement on January 30, 2004 *and thereafter*." *See Ellipso I* at 6 (emphasis added). Given the ambiguity of the October 2004 email, we cannot determine that the district court's factual determination regarding when Ellipso became aware of Patterson's dual roles was clearly erroneous.

Finally, Mann Tech argues that the district court erred in finding that Ellipso would be irreparably injured without the injunction and that Mann Technologies would not be harmed by the injunction. Mann Tech alleges that the court failed to consider the possible harm to Mann Technologies' business interests from the injunction by depriving it of the benefit of the increase in the value of the risky shares it took as collateral. But the district court found that "Mann Tech has no business operations and its only significant assets are Ellipso's ICOHA

Shares and the cash proceeds from its sale of approximately 200,000 ICOHA Shares." *Ellipso I* at 4. At oral argument, counsel for the defendants was asked specifically whether it was true that Mann Technologies had no significant assets other than the disputed shares. He responded that, "At the time [of the injunction], your Honor, that was [] correct." Recording of Oral Argument at 7:37. Given that Mann Technologies had no other assets from which Ellipso might satisfy a judgment and Mann Technologies had no apparent business use for these assets, we conclude that the district court did not err in finding that the balance of hardships favors Ellipso because Ellipso may be irreparably harmed without an injunction freezing those assets while Mann Technologies would not be irreparably harmed.

### III.

Had Mann Tech been able to prevail on its argument that Ellipso affirmed the loan agreement, it would have been in a position to launch a persuasive challenge to the power of the district court to freeze its assets. An injunction freezing assets is only permissible when a party has demonstrated an equitable claim to the assets. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332-33 (1999) (holding that a court may not enter an injunction freezing assets in action for damages where there is no equitable interest in frozen assets); *cf. Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-90 (1940) (permitting an injunction freezing assets because it assisted the ultimate equitable relief of rescission). If Ellipso had in fact affirmed the loan agreement, Ellipso's sole remedy for fraud in the inducement of that contract would have been damages—a legal remedy, *see Dean*, 779 A.2d at 915 (holding that party affirming contract is precluded from later seeking rescission); it would have been unable to show the equitable interest in the shares held by Mann Tech necessary to support the equitable remedy of an injunction. But Mann Tech never

made that argument,[2] and so its challenge of the preliminary injunction fails not only because it could not undermine Ellipso's showing of likely success on the merits, our holding here, but also because Mann Tech waived any objection to any asserted misuse of the court's equitable powers. *See, e.g.*, *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 n.1 (1939) (noting that unlike federal subject matter jurisdiction, "the parties may waive their objections to the equity jurisdiction by consent, or by failure to take it seasonably") (citations omitted); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (finding argument that district court lacked the equitable authority to issue injunction because "true gravamen" of complaint was for money damages was waived because it was raised for the first time on appeal); *Quenzer v. United States* (*In re Quenzer*), 19 F.3d 163, 165 (5th Cir. 1993) (noting that the principle that appellate courts do not consider issues raised for the first time on appeal "applies with even more force when [courts] address questions of the proper exercise of the equitable powers of the court").

## IV.

Because we cannot conclude that the district court abused its discretion, we affirm the grant of the preliminary injunction.

*So ordered.*

---

[2] Mann Tech only argued that an injunction was not appropriate because it believed there existed an adequate legal remedy, not because there existed no equitable interest. *See* Opposition of Defendants John B. Mann and Mann Technologies, LLC to the Plaintiff's Motion for Preliminary Injunction at 3-4, No. 05-civ-1186 (D.D.C. Sept. 27, 2005).