Maria HERRERA, et al., Plaintiffs,

v.

Richard W. RILEY, Secretary, United States Department of Education, et al., Defendants.

Civ. A. No. 95–0407 (RCL).

United States District Court, District of Columbia.

May 1, 1995.

Kevin J. Lanigan, Hogan & Hartson, Washington, DC, for plaintiffs.

Marina Braswell, Asst. U.S. Atty., Office of U.S. Atty., Washington, DC, for defendants.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This lawsuit is brought by several migrant farmworkers on behalf of themselves and their minor children, and as representatives of a proposed class of similarly situated persons. Plaintiffs seek an order from this court compelling the Secretary of Education ("Secretary") to reverse his decision to terminate the Migrant Student Record Transfer System ("MSRTS"), a federally funded databank which was designed to facilitate the collection and transfer of school and health records of children of migrant farmworkers. Plaintiffs argue that the Secretary's decision to discontinue the MSRTS program in the absence of an equally effective alternative system violates the Secretary's alleged statutory duty to ensure continuity in the transfer of migrant student records and is arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

The case comes before the court on the plaintiffs' motion for a preliminary injunction. Upon consideration of the filings and arguments of counsel, as well as the applicable statutes and case law, the court concludes that the extraordinary relief sought by plaintiffs is not warranted under these circumstances.

## I. Facts

In 1966, Congress established the Migrant Education Program ("MEP") through an amendment to Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. §§ 2701, *et seq.*[1] The MEP is a state grant program under which the federal government provides funds to state educational agencies and local school districts to help address the special problems and needs of the children of migrant workers. Of particular consequence to this litigation are the difficulties faced by migratory children in moving from school to school, often several times during the academic year. In order to ensure some measure of educational continuity, it is necessary for these children's school records to be immediately available when they enter a new school. In an effort to ameliorate these problems, Congress has authorized the Secretary to reserve annually at least $6 million, but not more than five percent of all funds appropriated for the MEP, to pay for the costs of special grants or contracts which seek to improve interstate and intrastate coordination of programs for migratory children. Since 1972, the Secretary has used this money to fund a program called the Migratory Student Record Transfer System.

The MSRTS program was designed to permit the electronic transfer of school and health records of migratory children, many of whom must often change school systems on short notice. The MSRTS is a national computer databank which is operated by the Arkansas Department of Education pursuant to a contract awarded each year by the Secretary. Once a student is identified as being eligible for the MSRTS system, he or she is assigned an MSRTS identification number and an initial record is generated for that student. From then on, the various schools attended by the child provide the MSRTS with updated information concerning the child's records. When the child arrives at a new school, administrators can request a copy of the child's health and educational records directly from the MSRTS.

The parties disagree over the actual utility of the MSRTS in facilitating the transfer of migratory students' records. The Secretary contends that, contrary to the description proffered by the plaintiffs, the system is complicated, expensive and inefficient. The Secretary cites several studies which have highlighted numerous shortcomings of the MSRTS system. Indeed, a study specifically commissioned by Congress concluded that, as a result of various problems associated with the MSRTS, "a significant number of migrant children now receive little or no direct benefit from the system despite its sophistication and cost." National Commission on Migrant Education, *Keeping up with Our Nation's Migrant Students: A Report on the Migrant Student Record Transfer System (MSRTS)* 2 (September, 1991). For a period of time, the Secretary considered recompeting the MSRTS contract in the hopes of improving the system. After further analysis and consideration, however, the Secretary determined that even a reconfigured records transfer system would not be cost-effective, and he decided to terminate the system altogether. Although it is still in the process of winding down operations, the MSRTS ceased transferring migrant student records on February 14, 1995. Plaintiffs concede that the MSRTS is imperfect. Indeed, paraphrasing Churchill, they state that "the MSRTS may be the worst method of records transfer—except for every other method that currently is available." Plaintiffs' Reply Mem. at 8. Nevertheless, plaintiffs contend that defendants have overstated the shortcomings of the MSRTS and that the system does play a vital role in facilitating the collection and transfer of records for numerous migrant students. Whatever shortcomings the system may have, plaintiffs maintain that the

---

1. The MEP is now authorized in 20 U.S.C. §§ 2781–2783.

MSRTS is much more effective in ensuring the continuity of migrant student records transfers than any other system now in existence. Plaintiffs allege that without the MSRTS, the transfer of migratory students' records will be performed in an unsystematic and ultimately less effective manner, and that this will result in substantial harm to many migratory children. Accordingly, plaintiffs seek an order from this court enjoining the Secretary from discontinuing the MSRTS until such time as the states are able to "effectively" assume responsibility for record transfers "without unacceptable disruptions." Compl. at 18.

## II. Analysis

■■■ Injunctive relief is an extraordinary remedy, and the party seeking it bears a substantial burden. In determining whether to grant such relief, the court must apply the following four-part inquiry: 1) Has the plaintiff demonstrated that there is a substantial likelihood that it will prevail on the merits of its claim? 2) Will the denial of injunctive relief result in irreparable harm to the plaintiff? 3) Would the issuance of an injunction substantially harm other parties interested in the proceedings? 4) Where lies the public interest? *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). It is clear that the likelihood of success on the merits and the degree of irreparable injury are the most important of these factors. The case law in this circuit makes clear that the test is not a wooden one, and the party seeking injunctive relief is not required to demonstrate a mathematical probability of success on the merits. Injunctive relief may be granted "with either a high probability of success and some injury, or *vice versa.*" *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985); *National Football League Players Ass'n v. Pro–Football, Inc.*, 849 F.Supp. 1, 2 (D.D.C.1993). Nevertheless, the party seeking preliminary injunctive relief clearly bears the burden of making "a *substantial* case on the merits." *Holiday Tours*, 559 F.2d at 843 (emphasis supplied).

## A. Likelihood of Success on the Merits

As noted above, plaintiffs argue that the Secretary is obligated by law to ensure continuity in migrant student record transfer, and that this obligation prohibits the Secretary from terminating the MSRTS in the absence of some alternative system which is at least as effective as the MSRTS in facilitating the transfer of migrant student records. By contrast, defendants maintain that, whatever the Secretary's obligations with respect to ensuring continuity of records transfer might be, the statutory language relied upon by the plaintiffs clearly commits to the Secretary's discretion the decision whether to continue or to terminate the MSRTS. Counsel for both sides have favored the court with forceful and articulate arguments in support of their respective positions. However, as the parties seem to agree, this case involves a straightforward question of statutory interpretation. Upon reviewing the applicable statutes, the court concludes that plaintiffs' chances of prevailing on the merits are quite slim.

The statutory scheme governing educational programs for migrant children is part of the Elementary and Secondary Education Act of 1965, 20 U.S.C. §§ 2701, *et seq.*, and is set forth at 20 U.S.C. §§ 2781–2783. Section 2781 provides for a program whereby state educational agencies ("SEA"s) may apply to the Secretary for grants "to establish or improve, either directly or through local educational agencies, programs of education for migratory children ... which meet the requirements of section 2782 of this title." Section 2782, in turn, sets forth a number of criteria which any state seeking a grant from the Secretary must meet in order to receive federal funds under this program. Specifically, § 2782 states that

> [t]he Secretary may approve an application submitted [by a state] under section 2781(a) of this title only upon a determination ... that payments will be used for programs and projects ... which are designed to meet the special educational needs of migratory children ... and to coordinate such programs and projects in other States, including the transmittal of

pertinent information with respect to school records of such children....[2]

Section 2783 is entitled "Coordination of migrant education activities," and it is part (a) of this section upon which plaintiffs primarily rely. Section 2783(a)(2)(A), originally enacted by Congress in 1978 as Pub.L. No. 95–261, provides that

[t]he Secretary is also authorized to enter into contracts with State educational agencies to operate a system for the transfer among State and local educational agencies of migrant student records....

In 1985, Congress added § 2783(a)(2)(B), which states that

[e]xcept as provided in subparagraph (C), for the purpose of ensuring continuity in the operation of such system, the Secretary shall, not later than July 1 of each year, continue to award such contract to the State educational agency receiving the award in the preceding year, unless a majority of States notify the Secretary in writing that such agency has substantially failed to perform its responsibilities under the contract during the preceding year.

Although not mentioned by name, it is clear that subsections 2783(a)(2)(A) & (B) represent Congress' express authorization of the MSRTS, a program which the Secretary and the states had already been operating for a number of years.

Plaintiffs argue that §§ 2781–2783 embody a congressionally mandated obligation, binding upon the Secretary, "to *ensure* effective records transfer and to maintain continuity in related services for migrant children." Plaintiffs' Reply Mem. at 12 (emphasis in original). Plaintiffs contend that this supposed statutory duty to ensure continuity in

records transfer precludes the Secretary from terminating the MSRTS until another system is in place which is at least as effective as the MSRTS in facilitating migrant student records transfers. Because no such system is currently in place, the Secretary's decision to discontinue the MSRTS was, according to plaintiffs, unlawful and/or an abuse of discretion.

The Secretary disputes the plaintiffs' characterization of his obligations under the statutes, and specifically challenges plaintiffs' interpretation of subsections 2783(a)(2)(A) & (B). The Secretary contends that the language of § 2783(a)(2)(A), which states that the Secretary is "authorized" to operate a records transfer system, makes clear that the Congress intended to leave the decision whether to operate the MSRTS to the Secretary's sound discretion. Defendants maintain that subsection 2783(a)(2)(B), which states that "for the purpose of ensuring continuity in the operation of such system, the Secretary shall, not later than July 1 of each year, continue to award such contract to the State educational agency receiving the award in the preceding year," simply provides for a sole source contract to run a records transfer system, should Secretary decide to establish one.

By contrast, plaintiffs assert that Congress intended subsection (a)(2)(B) (the language of which was enacted a number of years after (a)(2)(A)) to *require* the Secretary to maintain a system for the transfer of migrant student records, despite that fact that the wording of subsection (a)(2)(A), which merely *authorizes* the Secretary to enter into such contracts, has not been changed.[3]

---

**2.** Section 2782 includes other criteria which are not relevant to the present inquiry and have accordingly been omitted from this analysis.

**3.** Plaintiffs have arguably taken inconsistent positions on the question of whether § 2783(a)(2)(B) specifically requires the Secretary to maintain a records transfer system. In their brief in support of the motion for preliminary injunction, plaintiffs assert that § 2783(a)(2)(B) "requir[es] that the Secretary '*shall*' contract for a records transfer system...." Plaintiffs' Mem. in Supp. at 27 (emphasis in original). In their reply brief, however, plaintiffs chastise the defendants for misconstru-

ing their argument: "Defendants ... misstate[] plaintiffs' point, for Congress' intent ... is not that [the Secretary] is prohibited from terminating MSRTS, only that [the Secretary] is required to *ensure* effective record transfer and to maintain continuity in those services...." Plaintiffs' Reply Mem. at 12 (emphasis in original). In response to a query from the court on this point at oral argument, however, counsel for plaintiffs pointed out that subsection (a)(2)(B) was enacted *after* subsection (a)(2)(A). The clear import of counsel's argument was that the mandatory language of the after-enacted subsection did in fact override the discretionary language of (a)(2)(A).

**50**

As plaintiffs aptly note, canons of construction provide that a statute should not be interpreted in a way that renders part of the statute meaningless. *Abourezk v. Reagan*, 785 F.2d 1043, 1054 (D.C.Cir.1986). And yet, by arguing that subsection 2783(a)(2)(B) *requires* the Secretary to enter into contracts to operate a system for the transfer of migrant student records, plaintiffs effectively render the word "authorize" in subsection 2783(a)(2)(A) meaningless. Had Congress actually intended subsection (a)(2)(B) to eliminate the Secretary's discretion to decide whether to continue the MSRTS program, it certainly would not have retained the clearly *discretionary* language of (a)(2)(A). Furthermore, any possible ambiguity in the statute was completely removed by the language of Pub.L. 103–59 (enacted by Congress in 1993, and codified as a "statutory note" to § 2783) which states that *"[n]otwithstanding any other provision of federal law,* the Secretary of Education shall extend the contract for the operation of the [MSRTS] ... to operate such system *until such time as the Secretary of Education determines is necessary...."* (emphasis supplied). In the court's view, Congress' intent to confer upon the Secretary discretion whether to operate the MSRTS could hardly have been made more clear.

Thus, nothing in the language of the statutes relied upon by plaintiffs *specifically* requires the Secretary to operate the MSRTS. Nevertheless, plaintiffs maintain that the Secretary's ability to exercise his discretion is constrained by his alleged obligation to ensure that a system—whether the MSRTS or some other system—which will ensure continuity in the transfer of migrant student records is in place at all times. In plaintiffs' view, Congress has forbidden the Secretary from discontinuing the MSRTS unless and until some other equally effective system of records transfer is in place.

Plaintiffs argue that in addition to the language of §§ 2781–2783, Congress' intent to constrain the Secretary's discretion is further embodied in certain provisions of the Improving America's Schools Act of 1994, 108 Stat. 3518, *et seq.* The provisions of this Act relating to education of migrant children are codified at 20 U.S.C. §§ 6931–6399, and constitute amendments to the Elementary and Secondary Education Act of 1965. According to plaintiffs, four provisions of this statute, §§ 6391, 6392, 6394, and 6398, highlight Congress' intent to create a binding and enforceable obligation on the part of the Secretary to maintain continuity in the timely and effective transfer of migrant students' records.

The Improving America's Schools Act neither requires nor forbids the continuation of the MSRTS. Instead, the Act requires the Secretary to collect information on how student records are transferred from one school to another and to solicit recommendations on whether new procedures and technologies for records transfer should be employed to better meet the needs of the migrant population. As the filings of both parties explain, Congress was well aware of the many shortcomings of the MSRTS at the time it enacted the Improving America's Schools Act, and it is clear from the language of § 6398 that Congress recognized the very real possibility that the Secretary would decide to discontinue the MSRTS program. In fact, Congress specifically provided that

[n]ot later than April 30, 1995, the Secretary shall report to the Committee on Labor and Human Resources of the Senate and the Committee on Education and Labor of the House of Representatives the Secretary's findings and recommendations [regarding improvement of records transfer procedures], and shall include in this report, recommendations for interim measures that may be taken to ensure continuity of services in this program.

20 U.S.C. § 6398(b)(2)(A). Also, Congress directed that "[t]he Secretary shall assist the States in developing effective methods for the transfer of student records ... if such interim measures are required." 20 U.S.C. § 6398(b)(2)(B).

The word interim means during "an intervening time." *Webster's Ninth New Collegiate Dictionary* 631 (1983). The use of the word "interim" in § 6398(a)(2) suggests Congress' anticipation that there might be a period of time between the occurrence of one

event and the onset of some other event. Reading subsections (b)(2)(A) and (b)(2)(B) together, it appears that Congress realized that the Secretary might choose to discontinue the MSRTS system before another comprehensive system was in place. This seems the most plausible explanation of Congress' directive that "[t]he Secretary shall assist the States in developing effective methods for the transfer of student records ... *if such interim measures are required.*" 20 U.S.C. § 6398(b)(2)(B).[4] If, as plaintiffs maintain, Congress had intended to forbid the Secretary from discontinuing the MSRTS until an equally effective system was in place, it is hard to imagine why Congress would have used the words "if such interim measures are required." Had it truly been Congress' intent to require the Secretary to effect a seamless transition from the MSRTS to a new system, there would have been no need to provide for any "interim measures" because there could never be any "interim" time period between the termination of the MSRTS and the implementation of a new records transfer system. Thus, plaintiffs' legal argument, though cleverly conceived and eloquently presented, nevertheless finds little support in the language of the statutes and ultimately collapses under its own weight.

█ In summary, the court finds that the statutory language relied upon by the plaintiffs in this case contains no specific requirement that the Secretary maintain the MSRTS program. To the contrary, Congress has clearly committed the decision whether to continue the MSRTS to the Secretary's sound discretion. Plaintiffs' argument that the Secretary must nevertheless continue the MSRTS until he has implemented an equally effective alternative records transfer system is fundamentally at odds with the plain language of the statutes. Finally, even were the court to accept plaintiffs' contention that Congress has charged the Secretary with an enforceable obligation to ensure continuity in records transfers (a claim which the court finds dubious), the court would have to reject the proposition that such an obligation would provide a basis

for this court to *order* the Secretary to continue a program which Congress has clearly committed to the Secretary's own discretion. Accordingly, the court concludes that, far from demonstrating a substantial likelihood of success on the merits, the plaintiffs' chances of prevailing on their claims are minimal.

### B.   Irreparable Injury

Plaintiffs contend that the discontinuation of the MSRTS system has caused and will continue to cause serious harm both to the children of the named plaintiffs and to many migrant children who are members of the putative class. Specifically, plaintiffs claim that without the MSRTS there is no effective, comprehensive method of collecting and transferring student records from school to school. In the absence of the MSRTS, plaintiffs maintain, student information which had previously been transferred by the MSRTS either will not be transferred at all or will only be transferred haphazardly, through significantly less effective means. The result, according to plaintiffs, is that many students' records will not be transferred when the students move to their new schools, and as a result "thousands of children will be misplaced, refused placement altogether, denied credits, pushed toward dropping out of school altogether, and be exposed and expose others to serious health problems." Plaintiffs' Reply Mem. at 19–20.

Defendants contend that the harms described by the plaintiffs are theoretical and will only come about if the students' records are in fact not transferred to their new schools. These harms are speculative, say the defendants, because 1) individual states (with the assistance of the Secretary) have developed and are continuing to develop alternatives to the MSRTS; and 2) migrant parents ultimately bear the responsibility of ensuring the transfer of their childrens' school records, just as other parents do when they move.

Clearly, it is impractical for the court to make detailed inquiries into the factual merits of the points raised by either side at this

---

**4.**   The court notes that the materials submitted by defendants describe a number of ways in which the Secretary is now assisting the States in developing such interim measures.

juncture. For the purposes of resolving this motion, the court accepts plaintiffs' representations that the discontinuation of the MSRTS system will result in an increase (temporarily, at least) in the number of migrant student records that are not transferred in a timely manner to students' new schools. The court also accepts plaintiffs' description of the harms which may reasonably be expected to occur when a migratory student's records are not transferred in a timely manner. Furthermore, while it may be the case that migrant parents are theoretically capable of arranging for the transfer of their childrens' educational records, Congress has nevertheless clearly identified migrant schoolchildren as being in special need of assistance. To place sole responsibility for the transfer of migratory students' records on the shoulders of their parents would ignore Congress' implicit determination that some parents of migrant schoolchildren simply can not or will not perform this function.

As a preliminary matter, the court is skeptical of the irreparable harms claimed on behalf of the children of the *named* plaintiffs. If these plaintiffs are sophisticated enough to participate (and represent the interests of other class members) in a lawsuit of this kind, then surely they (or their lawyers) are capable of ensuring the transfer of their childrens' educational records. Congress' decision to create a special program to assist in the transfer of migratory children's school records certainly does not relieve parents who are *in fact* capable of performing that function from doing so.

Plaintiffs contend that the Secretary's obligations to a class of persons—migratory schoolchildren—prevent him from taking an act which is likely to cause irreparable injury to "significant numbers of the plaintiff class." Plaintiffs' Mem. in Supp. at 19–21. The only way to avoid this harm, say the plaintiffs, is for the court to issue an injunction ordering the Secretary to bring the MSRTS system back on line and to continue operating it until an equally effective system has been implemented.

Plaintiffs' irreparable injury argument is defective because it fails to appreciate the fact that Congress has granted the Secretary broad discretion to experiment with different methods of facilitating migratory student records transfers. It is apparent that no practical system can guarantee that all migratory students' records will be transferred in all cases. Congress has clearly recognized this fact, and has given the Secretary (and through him, the states) the ability to experiment with various alternative methods of transferring records. Under plaintiffs' formulation of the irreparable injury inquiry, however, the ability of the Secretary and the states to experiment would be seriously constrained. According to the plaintiffs' rationale, a migrant child whose records were being transferred under an existing system would be able to claim an irreparable injury in the event the Secretary adopted a new scheme which could not guarantee that the records of that particular student would continue to be transferred.

In other words, plaintiffs' irreparable harm analysis envisions a ratcheted scheme, whereby the Secretary may only alter an existing records transfer system if he can establish that all children covered under the present system will also be covered under the new system. If the new system fails to achieve this result, those children who were covered under the old system but who "slip through the cracks" and end up not being covered under the new system can claim an "irreparable injury" flowing from the Secretary's decision to alter the system. Thus, it appears that any significant modification of an existing records transfer system will almost always be prone to the risk that some students who had been covered under old system will no longer be covered under the new one. The court must reject the proposition, implicit in plaintiffs' irreparable injury argument, that the Secretary may only alter an existing records transfer system in a way which ensures that every single child who was covered under the old system continues to be covered under the new one.

Thus, the court must consider whether the Secretary's decision to terminate the MSRTS represents a threat of grave and irreparable injury to a substantial portion of the class itself, and not simply whether certain individual students are likely to be harmed. As

noted above, any significant change to an existing system presents a risk to some number of individual migratory students. For the following reasons, the court concludes that the plaintiffs have failed to establish a sufficiently grave threat of harm to the plaintiff class.

First, it is clear that the MSRTS is an imperfect system. Congress has taken note of its many shortcomings, and has encouraged the Secretary to investigate possible alternative systems. *See* 20 U.S.C. § 6398(b). Although it is clear that no other comprehensive system exists for facilitating the transfer of migratory students' records, the Secretary and the states have been working to implement a variety of other record transfer methods. While these alternative methods may not be fully implemented at this time, and while they may not be as comprehensive as the MSRTS, it is clear that the discontinuation of the MSRTS in no way signals the end of federal and state efforts to ensure the timely transfer of migratory students' records. Nor does the court find any reason to believe that either the Secretary or the states intend to avoid their obligations in this regard.

■ Second, the Secretary represents that he intends to release the sum of $2 million, which would otherwise be spent on the MSRTS, directly to the states. In the Secretary's opinion, this money would be more effectively spent by the states in developing alternative records transfer systems than in continuing to fund the MSRTS, a system which the Secretary considers to be largely ineffective. The court is disinclined to second-guess the Secretary's conclusion on this matter. Thus, to the extent that the states spend the money on alternative records transfer systems, it would appear that the harm to the plaintiff class occasioned by the discontinuation of the MSRTS is likely to be mitigated, to some extent, by the reallocation of money from the MSRTS program directly to the states themselves.

■ Finally, the nature of the harm alleged is simply not of a kind which might counterbalance the plaintiffs' weak showing of likelihood of success on the merits. This is not a situation where the very subject matter of the litigation will be damaged, destroyed, or irretrievably lost if the court does not act now. While some harm may befall individual class members as a result of the discontinuation of the MSRTS, it simply does not appear that the class itself is threatened with the kind of dire, irreversible harm which might otherwise persuade the court to grant the extraordinary relief sought by the plaintiffs. For these reasons, the court finds that plaintiffs have failed to make a sufficient showing of irreparable harm.

C. The Harm to Other Parties and Public Interest

By the very nature of his position, the Secretary of Education represents the public interest; thus, the last two elements of the preliminary injunction inquiry essentially merge into one.

■ As set forth at greater length above, the court finds that Congress has conferred upon the Secretary substantial discretion to implement Congress' goals with respect to the educational needs of migrant children. The court finds no reason to conclude that the Secretary's decision to discontinue the MSRTS was arbitrary, capricious or taken in bad faith. To the contrary, the Secretary has amply demonstrated his belief that the MSRTS system has become cumbersome and inefficient and ought to be terminated. Accordingly, the court finds that the public interest would certainly not be served by this court's precipitous interference with a decision which has been committed by Congress to the Secretary's own discretion.

III. Conclusion

The plaintiffs have failed to establish that they have a substantial chance of success on the merits. In fact, the court has concluded that the plaintiffs' chances of succeeding on the merits are quite slim. Nor have plaintiffs demonstrated the existence of an irreparable injury which might overcome this weak showing on the merits. Finally, the court finds that the public interest militates against the issuance of an injunction under the present circumstances. Accordingly, plaintiffs' motion for a preliminary injunction will be

denied. A separate order shall issue this date.

### ORDER

This case comes before the court on plaintiffs' motion for a preliminary injunction. For the reasons set forth in the accompanying memorandum opinion, the motion for preliminary injunction is hereby DENIED.

SO ORDERED.