## In re ESTATE OF Dorothy O. REILLY; Robert W. Alvord, Appellant.

### No. 06–PR–320.

District of Columbia Court of Appeals.

Argued Feb. 6, 2007.

Decided Oct. 11, 2007.

---

Stephen M. Truitt, with whom Edward M. Andries, Washington, DC, was on the brief, for appellant.

Kenneth G. Stallard, with whom Nicholas D. Ward and Julian E. Markham, Washington, DC, were on the brief, for appellees.

Before GLICKMAN and KRAMER, Associate Judges, and KING, Senior Judge.

KRAMER, Associate Judge:

Appellant Robert Alvord is the personal representative of the estate of Dorothy Reilly and trustee of the Residence Trust, a part of that estate. Appellees John Reilly and Margaret Reilly Heffern have sued Mr. Alvord in his capacities as representative of the estate and trustee of the Residence Trust, as well as in his individual capacity, claiming the right to the Residence Trust. The trial court granted a preliminary injunction, restraining Mr. Alvord from drawing on funds in the Residence Trust to pay for the costs of litigation. Mr. Alvord filed this interlocutory appeal, arguing that the Reillys failed to establish the threat of irreparable injury, a substantial probability of success on the merits, or that the balance of harms supported granting the injunction. We disagree and affirm.

## I. Background

The appellees are the children of Gerard Reilly, a former Chief Judge of this court, and his first wife Eleanor, who died in 1980. Dorothy Reilly, was Gerard Reilly's second wife. When Eleanor died, Gerard Reilly became the owner of their residence located at 3515 Lowell Street, Northwest. Upon his death in 1995, one half interest in this residence was devised to Dorothy, and the other half was devised to the appellees in equal shares, with the restriction that the right of partition could not be exercised against Dorothy for one year.

In 1998, Dorothy created two trusts: the Residence Trust and the Revocable Trust. The Residence Trust consisted entirely of Dorothy's one-half interest in the Lowell Street property, and the appellees were its beneficiaries. The Revocable Trust was funded by Dorothy's personal property, and its ten beneficiaries are her family members living in Minnesota, Wisconsin, Colorado, and Maine. The Revocable Trust's purpose is to assist its beneficiaries with their educational expenses.

Dorothy revised the Residence Trust in 1999, removing the appellees as beneficiaries and replacing them with the Revocable Trust, effectively directing all of the property to her own relatives. Dorothy died in 2002. Mr. Alvord, who drew the wills of both Gerard and Dorothy Reilly, and who was a co-trustee of both the Residence and Revocable Trusts, was appointed executor of Dorothy's estate.

In 2003, the appellees filed suit against the Estate, alleging breach of contract to devise real estate. Count I of their Complaint alleged that there existed an oral agreement between Gerard and Dorothy Reilly by which Gerard Reilly agreed to

convey one-half interest in the residence to Dorothy in consideration for her promise to devise her interest to his children. Count II of the Complaint was for recovery of fair rental value of the property; Count III alleged intentional interference with inheritance; and Count IV sought partition of the property. Mr. Alvord answered with a counterclaim for abuse of process. Count IV became moot when the appellees agreed to the sale of the property, with half of the proceeds going to the appellees and the other half going to the disputed Residence Trust. The appellees subsequently filed a separate action against Mr. Alvord in his personal capacity alleging malpractice and breach of fiduciary duty.

Thereafter, Mr. Alvord moved for summary judgment on Counts I and III of the complaint against the estate. The trial court granted the motion with respect to Count III, holding that the District of Columbia does not recognize the tort of intentional interference with inheritance. It denied the motion, however, with respect to Count I, the claim based upon breach of the oral agreement. The court held that the Statute of Limitations did not dictate summary judgment on this claim because (1) an ambiguity in the language of a tolling agreement between the parties made summary judgment inappropriate, and (2) the court construed the appellees' claim as seeking the imposition of a constructive trust, which exempts the claim from the Statute of Limitations. Dealing next with Mr. Alvord's Statute of Frauds defense to Count I, the court held the defense failed because there was part performance by Dorothy, and also because the Statute of Frauds does not apply to a constructive trust.

Thereafter, appellees filed a motion for a protective order to freeze the assets within the Residence Trust and to compel Mr.

Alvord to return monies already withdrawn for litigation expenses. At the time the parties submitted their briefs, the Residence Trust held $882,284, and the Revocable Trust held $72,741. The court treated the motion as one for a preliminary injunction. It granted it in part, and denied it in part, holding that assets already paid out in attorneys' fees could not be recovered, but enjoining any further dissipation of Residence Trust funds for litigation expenses. This appeal followed.

## II. Discussion

There are four criteria to be considered by a trial court when granting a preliminary injunction.

A proper exercise of discretion requires the trial court to consider whether the moving party has clearly demonstrated (1) that there is a substantial likelihood he [or she] will prevail on the merits; (2) that he [or she] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him [or her] from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order.

*Feaster v. Vance*, 832 A.2d 1277, 1287 (D.C.2003) (quoting *District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 21 (D.C. 1993)) (alterations in *Feaster*). In our review of an order granting a preliminary injunction,

it is not our task to resolve the overall merits of the dispute between the parties.... Rather, our role is confined to (1) examining the trial court's findings and conclusions to see if they are sufficiently supported by the record; (2) assuring that the trial court's analysis reflects a resolution of all the issues which necessarily underlie the issuance of an

injunction; and (3) inquiring into any other claims of an abuse of discretion by the trial court.

*Zirkle v. District of Columbia,* 830 A.2d 1250, 1256 (D.C.2003) (quoting *Wieck v. Sterenbuch,* 350 A.2d 384, 387 (D.C.1976)). If, however, the trial court's decision " 'turns on a question of law or statutory interpretation, we may reach the merits of the controversy.' " *Id.* at 1256 n. 5 (quoting *Don't Tear It Down, Inc. v. District of Columbia,* 395 A.2d 388, 391 (D.C.1978)).

### A. Irreparable Harm

■ Mr. Alvord argues that the trial court erred in finding that the appellees were in danger of suffering irreparable harm in the absence of the injunction. He bases this argument (1) on the fact that attorneys fees are expressly authorized by the trust, (2) on the "American Rule," by which each party is responsible for its own attorneys fees, and (3) on the fact that the appellees are pursuing a separate remedy at law capable of redressing their wrong, that is, the suit against Mr. Alvord for malpractice and breach of fiduciary duty. We address these arguments seriatim.

The fact that attorneys' fees are expressly authorized by the trust is of no help to Mr. Alvord. Indeed, the law is clear that a trustee may use funds from the trust to defend it in litigation, regardless of the outcome. *See, e.g.,* RESTATEMENT (THIRD) OF TRUSTS § 88 cmt. d (2005) ("The right of indemnification applies even though the trustee is unsuccessful in the action, as long as the trustee's conduct was not imprudent or otherwise in violation of a fiduciary duty."). The potential harm is irreparable precisely because Mr. Alvord had the legal right to use trust assets to pay attorneys fees. If it were improper for Mr. Alvord to use the funds to defend against a successful claim, then he would be liable to the appellees for any improper

withdrawals, and there would be no need for an injunction. In this case, the legality of the act is what requires the court to prevent it. Furthermore, we have previously upheld the imposition of a preliminary injunction preventing a party from engaging in acts that were otherwise perfectly legal, absent the injunction. *See, e.g., Simpson v. Lee,* 499 A.2d 889 (D.C. 1985) (affirming an injunction against leasing out or otherwise occupying property whose ownership was not in question); *see also Ellipso, Inc. v. Mann,* 375 U.S.App. D.C. 270, 276–77, 480 F.3d 1153, 1159–60 (2007) (affirming an injunction against selling shares in a case based on fraudulent inducement to contract, where those shares were the only known asset from which judgment could be satisfied).

■ Mr. Alvord also makes the argument that the injunction runs afoul of the "American Rule" governing attorneys' fees. "Under the so-called American Rule, 'a prevailing litigant ordinarily may not recover attorneys' fees from the defeated party when a case is concluded' unless that party acted in bad faith." *Lowrey v. Glassman,* 908 A.2d 30, 37 n. 9 (D.C.2006) (quoting *Jung v. Jung,* 844 A.2d 1099, 1107 (D.C.2004)). But the rule as applied here results in exactly the relief ordered below. Under the injunction, Dorothy Reilly's estate, through the Revocable Trust, can pay for the legal fees accumulated in defense of the Residence Trust, and the appellees will pay their own fees in prosecuting the lawsuit. The prevailing party will then have the full value of the Residence Trust to offset litigation expenses. As we understand it, even without any equitable relief ordered by the trial court, Mr. Alvord has had the power, since this litigation began, to use the Revocable Trust funds to pay attorneys fees incurred in defending the

Residence Trust,[1] as well as, for that matter, to ensure his own compensation for his efforts here. *See also In re Estate of King,* 769 A.2d 771, 779–84 (D.C.2001) (personal representative is entitled to receive from the estate compensation related to good-faith defense of a trust within the estate).

 Finally, Mr. Alvord claims that there is no irreparable harm in this case because the appellees have filed a suit against him in his personal capacity alleging malpractice and breach of fiduciary duty, and, he contends, can through that action obtain any damages he has caused them should appellees prevail there. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Zirkle, supra,* 830 A.2d at 1257 (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 104 U.S.App. D.C. 106, 110, 259 F.2d 921, 925 (1958)). But Mr. Alvord misunderstands the reasoning behind this rule. When a court considers opportunities to compensate for harm resulting from a preliminary injunction, those opportunities must be intrinsic to the instant litigation.[2] Here, the malpractice action alleges the same damages as the probate action, but the asserted wrong involves a different party and is predicated upon proof of an entirely independent set of facts; that winning one would allow appellees to break even after losing the other is legally irrelevant. We thus affirm the trial court's finding of irreparable harm.[3]

## B. Substantial Likelihood of Success

Mr. Alvord further argues that the trial court erred in finding a substantial likelihood of success of the appellees' claim, which in this context would be defined as the imposition of a constructive trust. Instead, he argues that he should succeed as a matter of law under the doctrine of

---

1. We note that a provision of the Revocable Trust agreement, non-existent in the Residence Trust agreement, provides:

 Notwithstanding any other provision of this Agreement to the contrary, the surviving Trustee shall have the power, but not the duty, upon my death, to make such expenditures out of the property held in trust hereunder in order to facilitate the settlement of my estate. In exercising such power, the Trustees may pay, in part or in whole, ... counsel fees, personal representative commissions and all other items in connection with the settlement of my estate.

2. In cases where this rule has been applied, the alternative relief required no showing beyond success on the merits in the instant action. *See, e.g., Zirkle, supra,* 830 A.2d at 1257 (possibility of future reinstatement to employment with back pay precludes injunction against employment termination); *Chaplaincy of Full Gospel Churches v. England,* 372 U.S.App. D.C. 94, 101–02, 454 F.3d 290, 297–98 (2006) (no need for preliminary injunction against a practice that allowed only Catholic chaplains in the Navy to remain active past a certain age, when harm of "non-promotion" was both speculative and redressable after a hearing on the merits); *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.,* 418 F.3d 535, 545 (5th Cir.2005) (no need to enjoin allegedly improper fees, when any improper fees levied would be recoverable upon success on the merits); *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995) (no need for injunction where failure to renew his employment contract for an additional term can be redressed by money damages upon success on the merits).

3. Mr. Alvord accuses the appellees of filing the malpractice action separately as "an end run around amending the complaint in the present action." We note that our holding would be no different if the malpractice action were in the same proceeding as the probate action, for the two claims are separate and distinct. *See Astor Pictures Corp. v. Shull,* 64 A.2d 160, 161 (D.C.1949) (holding that "if a single primary right should be invaded by two distinct and separate legal wrongs, two causes of action would result").

laches, the Dead Man Statute, and the Statute of Frauds.

[A] party seeking temporary equitable relief need not show a mathematical probability of success on the merits. Rather, the level of probability of success that must be demonstrated will vary according to the court's assessment of the other factors pertinent to the analysis. Thus, a stay may be granted with either a high probability of success and some injury, or *vice versa.* Thus, if irreparable harm is clearly shown, the movant may prevail by demonstrating that he or she has a substantial case on the merits.

*Akassy v. William Penn Apartments, Ltd. P'ship,* 891 A.2d 291, 309–10 (D.C.2006) (citations and internal quotation marks omitted) (quoting *In re Antioch Univ.,* 418 A.2d 105, 109 (D.C.1980)); *Cuomo v. United States Nuclear Regulatory Comm'n,* 249 U.S.App. D.C. 54, 56, 772 F.2d 972, 974 (1985); *accord, Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir.1987); *Competitive Enters. Inst. v. United States Dep't of Agric.,* 954 F.Supp. 265, 269–70 (D.D.C.1996); *Herrera v. Riley,* 886 F.Supp. 45, 48 (D.D.C. 1995). Nevertheless, if the appellees' claims are barred by law, we must reach the merits of the decision at this point. *See Zirkle, supra,* 830 A.2d at 1256 n. 5.

■■■ "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Dennis v. Edwards,* 831 A.2d 1006, 1013 n. 3 (D.C.2003) (quoting *Gray v. Gray,* 412 A.2d 1208, 1210 (D.C.1980)). " 'Since a constructive trust is found for the purpose of preventing humans from being successful in shady bits of behavior, it is universally recognized that the required operative facts can be proved by parol.' " *Hertz*

*v. Klavan,* 374 A.2d 871, 873 (D.C.1977) (quoting 4A RICHARD R. POWELL & PATRICK J. ROHAN, POWELL ON REAL PROPERTY ¶ 594, at 567 (1974)). Furthermore, in a constructive trust action, there is no set limitations period, because

it is not at all self-evident that substantial prejudice to the defendant's ability to defend himself is an inherent consequence of plaintiff's delay in prosecuting the case. As distinguishable from a suit over a discrete event, an equitable action involving property rights is by nature not so time-sensitive.... Rather, the guiding principle is one of laches.

*Granville v. Hunt,* 566 A.2d 65, 68 (D.C. 1989) (citations omitted); *accord, Interdonato v. Interdonato,* 521 A.2d 1124, 1136 (D.C.1987) (holding that "the statute of limitations cannot bar appellants' claim that a constructive trust should be imposed ... because a constructive trust is an equitable remedy, and therefore not subject to the statute").

### 1. *Laches*

■■■ Mr. Alvord argues that the doctrine of laches is a complete bar to the appellees' constructive trust action, because in cases of mixed law and equity, courts "consider themselves bound by statutes of limitations governing actions of law." *King v. Kitchen Magic, Inc.,* 391 A.2d 1184, 1187 (D.C.1978). This rule, as the trial court indicated, appears to be mere dicta in this jurisdiction. Courts refer to the rule only to establish that allegations of fraud trigger a well-established exception to the "rule." *See, e.g., Fed. Mktg. Co. v. Virginia Impression Prods. Co.,* 823 A.2d 513, 528 (D.C.2003) (holding that the trial court's limiting of claims to those occurring five years before the date of filing under laches was "reasonable; generous even, inasmuch as it was two years beyond the statutory limitations pe-

riod"); *King, supra,* 391 A.2d at 1187 (holding that "[n]o rigid rule, such as a specific statute of limitations, controls in a case where fraud is an issue"); *Chiswell v. Johnston,* 55 App. D.C. 3, 7, 299 F. 681, 688 (1924) (holding that "fraud creates an exception to the rule"). These cases stand primarily for the proposition that laches need not mimic the statute of limitations when fraud is at issue. Nor is laches bounded by the statute of limitations when a court assesses a claim of constructive trust. In *Interdonato, supra,* this court applied the statute of limitations to claims growing out of the defendant's promises that "sound in contract." 521 A.2d at 1136. At the same time, the court held that constructive trust claims based on a promise by the defendant were not barred by a fixed period "because an action to create a constructive trust is equitable in nature." *Id.* at 1137.

■ "A successful defense of laches has two elements: an unreasonable and unexplained delay by one party, and prejudice to the other party resulting from the delay." *Id.; accord M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 189 (D.C.1992) ("For laches to bar an equitable action, 'the defendant must have been prejudiced by plaintiff's delay, and plaintiff's delay must have been unreasonable.'" (quoting *Martin v. Carter,* 400 A.2d 326, 329 (D.C. 1979))). Furthermore,

> the utmost leniency is manifested by the courts where it appears that the delay is due to the intimate personal relationships existing between the parties and the high degree of confidence reposed by one in another. In such cases, and especially when the family relation ex-

ists, the same degree of diligence is seldom required.

*Interdonato, supra,* 521 A.2d at 1137 (quoting *Horton v. Horton,* 63 App. D.C. 375, 376, 72 F.2d 831, 832 (1934)).

Here, Mr. Alvord puts forth no argument as to why any delay was unreasonable, or how such delay prejudiced his ability to defend the action. Instead, he argues merely that the limitations period bars the appellees' claim as a matter of law. Such an argument cannot have merit with respect to the imposition of a constructive trust, where a defense of laches cannot be based on "the length of time in and of itself." *Granville, supra,* 566 A.2d at 68.

### 2. *Dead Man's Statute*

■ Mr. Alvord also argues that the appellees' claims are defeated by the Dead Man's Statute.[4] That Statute precludes entry of judgment in favor of a plaintiff suing a representative of a deceased person, if that judgment is based solely on the plaintiff's uncorroborated testimony as to interactions between her and the deceased or incapable person. *Gray, supra,* 412 A.2d at 1212.

Here, the appellees offer their own testimony, corroborated by the evidence of Dr. Deborah Fort, a friend of Dorothy Reilly. In a sworn letter, Dr. Fort stated that Dorothy had told her that she had promised her husband to leave her half of the residence to his children. She also told Dr. Fort that she changed the terms of the Residence Trust in violation of this promise, swearing her to secrecy. Should the trial court credit this evidence, the appel-

---

4. D.C.Code § 14–302(a) (2001) ("In a civil action against ... [the] representative of a deceased person ... a judgment or decree may not be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff ... as to any transaction with, or action, declaration or admission of, the deceased ... person.").

lees will overcome the requirements of the Dead Man's Statute.[5]

### 3. Statute of Frauds

Finally, Mr. Alvord argues that the appellees' action is barred by the Statute of Frauds. The trial court held that the Statute of Frauds did not apply to the appellees' claims for two separate reasons. First, regarding appellees' attempt to prove the existence of an express trust, he held that the Statute did not apply because there was part performance of the oral agreement. Second, understanding appellees' claim in the alternative to be the existence of an implied trust, he held that constructive trusts are never subject to the Statute of Frauds.

The Statute of Frauds requires that agreements creating a trust of real estate be in writing. D.C.Code § 28–3503 (2001). Oral agreements are exempt from this rule, however, if "acts of part performance ... constitute unequivocal evidence of the alleged agreement." *Hackes v. Hackes*, 446 A.2d 396, 401 n. 9 (D.C.1982) (citing *Kaufmann v. Adalman*, 186 Md. 639, 47 A.2d 755, 761 (1946); 73 AM.JUR. 2d *Statute of Frauds* § 406 (1974)). Here, the trial court found that the initial Residence Trust, created with the appellees as beneficiaries, constituted such part performance on the part of Dorothy Reilly. Furthermore, the trial court noted in its order denying Mr. Alvord summary judgment that Dorothy Reilly's subsequent amendment supports appellees' contention that "she wrote the Residence Trust to

fulfill her part of the bargain, then changed it because of anger at the beneficiaries." While we may harbor some reservation about whether the evidence here was "unequivocal," *see McCartney v. Fletcher*, 11 App. D.C. 1, 19 (1897) (noting that the "mere making of the deeds, or directing them to be made to the grantee, would certainly not be sufficient" part performance to take a parol agreement out of the Statute of Frauds), we need not decide that question because we agree with the trial court's determination that the Statute of Frauds should never bar the imposition of a constructive trust. *See Tauber v. District of Columbia*, 511 A.2d 23, 27 n. 11 (D.C.1986).

Express trusts are created when the settlor manifests an intent to place trust property in the hands of the trustee for the benefit of another, and the settlor must use written words to express her intentions if she wants the trustee to be bound. *See* RESTATEMENT (SECOND) OF TRUSTS § 17 (1959). Thus, the basis for express trusts is the written manifestation of the settlor's intent, and the Statute of Frauds operates. The basis for implied trusts—indeed, their most evident difference from express trusts—is the *absence* of any expressed words evincing the intent of the would-be settlor to create a trust for the would-be beneficiary. The existence of such words obviates a claim for a resulting trust (where the settlor designated one person as the beneficiary but, the claimant argues, meant for someone else to be the beneficiary) or a constructive trust (where

---

**5.** Mr. Alvord argues that Dr. Fort's letter is inadmissible because it does not meet certain procedural requirements and because the date of the notary signature on the letter, when compared to the date on which the letter purportedly was written, indicates that the letter was not signed before the notary public. We decline to address such irregularities at this stage of the proceedings. Were

this a final judgment, then the admissibility of the letter would be at issue. Because we are only reviewing the issue of appellees' substantial likelihood of success, however, we need not apply the procedural rigor that the trial court would to each piece of evidence as presented at trial. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

the settlor designated one person but, the claimant argues, equity demands a different beneficiary). *See Hertz, supra,* 374 A.2d at 873 (holding that "the operative facts" of a constructive trust "can be proved by parol"); *see also Starzec · v. Kida,* 183 Conn. 41, 438 A.2d 1157, 1160 n. 2 (1981) (holding "[t]he statute of frauds ... do[es] not apply to constructive trusts, which are implied by operation of law"); *cf. Edwards v. Woods,* 385 A.2d 780, 784 n. 5 (D.C.1978) ("It is true that the Statute of Frauds does not apply to resulting trusts. They come within § 28–3503's exception for trusts 'aris[ing] or result[ing] by operation of law.'" (citations omitted)). *See generally* 5 AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 406 (1989). Thus, the Statute of Frauds presents no obstacle to appellees' claim for a constructive trust.[6]

In summary, Mr. Alvord's arguments against the appellees' likelihood of success on the merits are based almost entirely on legal bars to recovery, which analysis shows do not exist here. He presents no argument about the actual strength of the appellees' evidence. Because of this, and given the strong showing of irreparable harm made by the appellees, *see Akassy, supra,* 891 A.2d at 309–10, we find no error in the trial court's finding of substan-tial likelihood of success on the merits supporting the injunction.

### C. Balance of the Harms

▮▮▮▮ Finally, Mr. Alvord argues that the trial court erred in finding that the balance of harms favors the imposition of an injunction. Before granting a preliminary injunction, the trial court "must determine that '*more* harm will result to the movant from the denial of the injunction than will result to the nonmoving party from its grant.'" *District of Columbia v. Greene,* 806 A.2d 216, 223 (D.C.2002) (quoting *Group Ins. Admin., supra,* 633 A.2d at 23). The trial court reasoned that the harm to the beneficiaries of the trust if the motion was granted would be less than that to the appellees if it was not, because (1) if the appellees are unsuccessful, the funds from both trusts will then be available to reimburse any litigation expenses incurred; (2) the Revocable Trust has $72,741 that may be used to fund this litigation, because the money in the Residence Trust to which the Revocable Trust's beneficiaries are entitled, however much that may ultimately be, will be added to the Revocable Trust; (3) Mr. Alvord has provided no evidence other than his own representation to show that the beneficiaries are incapable of financing the litigation on their own, nor has he made a credible showing that the Revocable Trust

---

**6.** We find no merit in Mr. Alvord's reliance on *Duggan v. Keto,* 554 A.2d 1126 (D.C.1989). In that case, which did not discuss the Statute of Frauds, the court refused to impose a constructive trust, holding that mutual wills in and of themselves were insufficient to establish that the wills were irrevocable. *Id.* at 1132. Here, there is independent corroborating evidence establishing the existence of a promise not to revoke. Furthermore, Mr. Alvord argues that we are bound by the court's holding in *Duggan* that "[w]hen someone is lawfully entitled to possession of certain property, there is no reason to impose a constructive trust on that property for the benefit of someone else." *Id.* at 1134. Mr. Alvord misunderstands this holding. In *Duggan,* the couple were joint tenants in the property. Therefore, on his death, the husband's interest in the property transferred to the wife by operation of law, and nothing in his will could have changed that outcome. This is the lawful entitlement·to which the *Duggan* court refers, and which is absent here. *See id.* ("Mary received no benefits under the Colonel's will because she was already the joint owner of almost all the property at issue. She was fully entitled to all of that property, as well as her statutory allowance.").

funds are insufficient to fully litigate this matter; and (4) should the funds in the Revocable Trust be exhausted, Mr. Alvord can seek to have the injunction modified. We agree with the trial court's analysis with respect to the balance of harm and find no error. *Cf. Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 565 (5th Cir.1987) (holding that "the burden, however, will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released").

### III. Conclusion

For the foregoing reasons, the preliminary injunction imposed by the trial court on the appellant is

*Affirmed.*