Marcus **GRIFFITH**, et al., Appellants,

v.

Cornelius **BUTLER**, Appellee.

No. 88–281.

District of Columbia Court of Appeals.

Submitted Dec. 7, 1989.

Decided March 16, 1990.

---

W. Eric Cloud was on the brief, for appellants.

Charles H. Acker, III, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and MACK, Senior Judge.

FARRELL, Associate Judge:

Appellee Butler sued to recover possession of real estate which he had leased to appellants, the Griffiths, beginning in 1975. The complaint alleged that the Griffiths had failed to pay the stipulated rent of $900.00 per month from January 1986 through April 1987 when the suit was filed. The Griffiths answered by alleging, inter alia, that the premises (a townhouse) "contained substantial housing code violations that were repaired at the expense of the defendant." Issues at trial focused on the nature and scope of an agreement by which the Griffiths would pay for certain expenses associated with the property for which Butler would reimburse them at some time in the future. The Griffiths, who had kept meticulous records for such expenses since 1977, contended that the parties' "understanding" since 1977 was that Butler would reimburse them for all necessary maintenance and repair of the property, an understanding they asserted Butler had confirmed in a letter to them on January 3, 1985, stating that he would "reimburse [the Griffiths] for expenses incurred by you for maintenance of my property.... This statement refers to the entire period of your occupancy."[1] Butler, by contrast, contended that the parties had had no such past agreement for reimbursement, that his January 3, 1985 promise was meant to be prospective only, and that prior to that time the parties' understanding had been that the Griffiths, with certain limited exceptions, would bear all expenses of maintaining the townhouse in return for a reduced monthly rent.[2]

After hearing testimony and reviewing the exhibits submitted by the parties, Judge Dixon found as a fact that the parties had operated under a "very loose agreement" from 1977 to the present whereby Butler would pay personally or reimburse Griffith for water and sewer charges "plus expenses reasonably related to the maintenance of the property," but excluding improvements. The judge therefore concluded that the Griffiths were entitled to credit for a portion of the expenses they had incurred against the claimed rent arrearage of $18,184.97. Although noting that the Griffiths had not filed a counterclaim but instead had pleaded what amounted to a setoff to Butler's claims for rent due in 1986 and 1987, the judge found that "it would be inappropriate to limit the

1. The complete text of the letter was as follows:
   Dear Mr. Griffith:
   This is to confirm our previous conversation that I will reimburse you for expenses incurred by you for maintenance of my property at 505 G Street, Southwest, Washington, D.C. These expenses are those which are the usual responsibility of an owner. This statement refers to the entire period of your occupancy. Payment will be based on receipts for the expenditures, plural or singular, but will not exceed average (median) costs for the expenditure or expenditures.

Payment will be made at a time agreeable to both of us.
   Sincerely,
   /S/

2. The exceptions, according to Butler, were those set forth in the original written lease agreement which required Butler to pay the cost of water and sewer services and D.C. real estate taxes. Butler also agreed that he was responsible for certain "maintenance charges," including charges for parking space rights, imposed on all homeowners in the development.

credits that the tenant might receive just to 1986 and 1987"; rather, "substantial justice" and equity required him to consider as credits "reasonable and necessary repairs and maintenance expenses that did not exceed three years prior to the time the complaint was filed." For similar equitable reasons, the judge took account of expenses that the Griffiths had actually deducted from the rent in the years preceding the three-year statute of limitations period. Examining each of the expenses the Griffiths had incurred from 1977 through 1987, Judge Dixon awarded them credits totalling $3,806.78 against the arrearage of $18,184.97, and ordered them to pay the balance of $14,378.19 plus court costs in order to avoid forfeiture of the premises.

Our review of the trial court's finding as to the parties' agreement concerning reimbursement is governed by the clearly erroneous standard. D.C.Code § 17–305 (1981); *see Auxier v. Kraisel,* 466 A.2d 416, 418 (D.C.1983). On this record we cannot say—and the Griffiths do not seriously contend—that Judge Dixon erred in finding that Butler had agreed to reimburse the Griffiths for water and sewer charges and expenses reasonably necessary to maintain (but not improve) the property. In addition, however, the trial court concluded that the Griffiths' claim for credits reaching back beyond April of 1984 was barred by the statute of limitations,[3] and this aspect of the court's ruling gives rise to a problem that, we conclude, necessitates a remand to the court for further findings.

■ Specifically, the Griffiths do not dispute that, in ordinary circumstances, the three-year statute of limitations would apply to their claim for rent credits that reach back beyond the 1986–1987 period covered by the landlord's suit. *See Hines v. Sharkey,* 449 A.2d 1092, 1093–94 & n. 4 (D.C. 1982) (tenant-defendant in landlord's action for possession may counterclaim for rent abatement based upon housing code violations predating period for which landlord claims nonpayment; but such counterclaim

is subject to three-year statute of limitations). Appellants contend, rather, that under the doctrine of "acknowledgment", Butler's letter to the Griffiths on January 3, 1985, agreeing to reimburse them for reasonable maintenance expenses for "the entire period of your occupancy," removed the statutory bar of limitations and allowed them to claim expenses for the entire period of the agreement. When appellant argued this point below and cited cases, the judge's only response was to observe— without explanation—that there is a "difference" between invoking the doctrine when one has filed a complaint (or counterclaim) and relying on it when one has merely answered in the form of a setoff, as the Griffiths had done. Because we can find no basis in law for the judge's distinction, and because he did not otherwise consider application of the doctrine of acknowledgment, we must remand the case for further consideration of this issue by the trial court.

■ D.C.Code § 28–3504 (1981) provides in part:

In an action upon a simple contract, an acknowledgment or promise by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations ... *unless the acknowledgement or promise is in writing, signed by the party chargeable thereby....* [Emphasis added.]

As this court has stated:

The acknowledgment must be made either to the creditor or to someone acting for him, or to some third person with intent that it be known by and influence the action of the creditor. *Grass v. Eiker,* D.C.Mun.App., 123 A.2d 613 (1956). A distinct and unequivocal acknowledgment of the debt as a still subsisting personal obligation constitutes an implied promise to pay it, and takes the contract out of the statute [of limitations]. *Hayden v. International Banking Corp.,* 59

---

3. As pointed out previously, the court made an exception to this ruling for expenses the Griffiths had actually deducted from the rent in the years before April 1984. Butler questions this

"exception" to the bar of limitations, but he took no cross-appeal from the trial court's judgment, and that aspect of the court's ruling is therefore not before us.

App.D.C. 313, 41 F.2d 107 (1930); *Green v. Reeves*, 47 App.D.C. 83 (1917). *Heffelfinger v. Gibson*, 290 A.2d 390, 394 (D.C.1972). No new consideration is necessary for an acknowledgment, for "since the unextinguished original debt remain[s] *in foro conscientiae* as obligatory, it [is] itself a sufficient consideration for the new promise." *Nyhus v. Travel Management Corp.*, 151 U.S.App.D.C. 269, 280, 466 F.2d 440, 451 (1972). While courts and legislatures have recognized a potential for "fraud and vexing litigation" in the doctrine, that risk is considered sufficiently neutralized by the statutory requirement of a writing signed by the debtor. *Id.*

In this case, as noted, the trial judge's only apparent reason for rejecting the Griffiths' claim of acknowledgment was that appellants had cited the past agreement for reimbursement as a setoff rather than in a complaint or counterclaim. We conclude that that distinction has no significance in this context. Historically, a setoff was a claim interposed by the defendant as a "counter demand ... arising out of a transaction *extrinsic* of the plaintiff's cause of action." *Local 31, Nat'l Ass'n of Broadcast Employees & Technicians v. Timberlake*, 409 A.2d 629, 633 (D.C.1979) (emphasis in original). Generally, a cause of action sounding in tort could not be asserted as a setoff, because of the "requirement that the claim be for a liquidated amount or arise out of a contract or judgment." 6 C. WRIGHT, A. MILLER, M. KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2d § 1401, at 10–11 (2d ed. 1990). In contrast, a counterclaim had to arise from the same transaction that formed the basis of the plaintiff's action, although the claimant was not limited to recovery of a liquidated sum. *Id.* at 11. We hold that the traditional distinction between a setoff and a counterclaim does not preclude the defendant from invoking the doctrine of acknowledgment in rebuttal when the plaintiff asserts the statute of limitations to bar a counterdemand sounding in contract and relating to the very obligation—here the duty to pay rent—upon which the plaintiff's suit is based. Indeed, because it arose from the same transaction which formed the basis of the landlord's suit, at common law, the Griffiths' counterdemand likely would have been treated as a counterclaim.

■ Nor does the fact that the Griffiths sought equitable relief instead of damages compel a different conclusion. Although the Griffiths did not seek a money judgment, their answer to the complaint asserted "expenditures claimed as credits against rent," which is one basis for a counterclaim specified by Super.Ct. L & T R. 5(b) (1989). Rule 5(b) clearly limits all tenants' counterdemands, regardless of whether denominated an equitable defense of recoupment or setoff (used to defeat the landlord's possessory action) or a counterclaim (seeking a money judgment, possibly in excess of the claimed arrearage), to claims related to the demised premises. *Id.*[4] Because all cogni-

---

4. Current Rule 5(b) allows the tenant to seek a money judgment by way of a counterclaim when the landlord's suit for possession is based on nonpayment of rent, or is based on other defaults provided the landlord also seeks a judgment for arrearage. *See* Super.Ct. L & T R. 5(b) (tenant may assert counterclaim in actions for "nonpayment of rent *or* in which there is joined a claim for recovery of rent in arrears"). Such counterclaims, however, even if for an affirmative recovery, must be based on payment of rent, or expenditures claimed as credits against the rent. *Id.* Clearly, these same grounds can also form the basis for an equitable defense sounding in contract. The only difference lies in the relief sought.

Under our common law, as under Rule 5(b), the rule has always been that an equitable defense asserted to defeat a possessory action for non-payment of rent must bear some relation to the leased property and, consequently, to the duty to pay rent. In the seminal case of *Smith v. O'Connor*, 66 App.D.C. 367, 88 F.2d 749 (1936), the United States Court of Appeals for the District of Columbia Circuit held defensive pleading by a tenant in a landlord's action for possession to be governed by the rule that "any equitable defense *arising out of the same transaction* [as the plaintiff's claim] may be given in evidence in mitigation of damages, or recouped, not strictly by way of ... setoff, but for the purpose of defeating the plaintiff's action in whole or in part, and to avoid circuity of action." *Id.* at 369–70, 88 F.2d at 751–52, *quoting Winder v. Caldwell*, 55 U.S. (How.) 434, 443, 14 L.Ed. 487 (1852) (internal quotation marks omitted; emphasis added). *Accord, George Worthington & Son Mgt. Corp. v. Levy*, 204 A.2d 334, 335–36 (D.C.1964); *Antonelli v. Smith*, 113 A.2d 570, 571–72 (D.C.1955); *Seidenberg v. Burka*, 106

zable defensive claims must pertain in some way to the rental obligation or the property, we conclude that the significance of the common law distinction between counterclaim and setoff has no importance in this context. Butler's statute of limitations defense relates to the grounds of the Griffiths' counterdemand—*i.e.*, their contractual right to reimbursement for past expenditures for necessary maintenance— not the relief sought. Because the defense would negate that right no matter how the counterdemand was denominated, we can perceive no reason to bar a rebuttal to the defense based solely upon the nature of the relief sought.

Moreover, functionally, what the Griffiths sought was no different than the rent abatement which the tenant sought by way of counterclaim in *Hines, supra,* 449 A.2d at 1093. Even appellee recognizes that, in essence, a counterclaim for expenditures claimed as credits against rent "is exactly what the tenants' claim was in this matter."

■ We conclude, therefore, that the trial court should have reached the question of whether the January 3, 1985 letter from Butler to the Griffiths was an implied (or, indeed, express) promise to reimburse them for reasonable past expenditures in maintaining the house, thereby removing the bar of limitations. The letter is seemingly unequivocal in declaring: "This statement [agreeing to reimbursement] refers to the *entire* period of your occupancy" (emphasis added). Butler, however, contended that use of the future tense elsewhere in the letter indicated that the promise was prospective only, and that he would have been "insane" to agree to reimburse the tenant for accumulated expenditures going back to 1977. Although the trial judge found that Butler in fact had agreed since 1977 to reimburse the Griffiths for reasonable maintenance expenses, he did not discuss the January 3 letter and made no finding whether it operated as an acknowledgment. We must therefore remand the case to allow the court to consider whether the letter had the effect of tolling the statute of limitations, and, if so, the temporal scope of any such acknowledgment.

Butler argues that even if the letter amounted to an acknowledgment, "it could only toll the statute [of limitations] for the three-year period immediately preceding its issuance." He cites no authority for this proposition, which appears contrary to law. As noted previously, decisional law regards an acknowledgment as an implied promise to pay a preexisting debt, supported by past consideration in the form of an obligation to honor the old debt. *Nyhus, supra,* 151 U.S.App.D.C. at 280, 466 F.2d at 451. The acknowledgment is enforceable as a new promise, and the creditor's rights are measured by it, not the old promise. *Ruppert v. Beavans,* 2 App.D.C. 298, 302 (1894). Accordingly, its effect on the statute of limitations is to extend the period for enforcing the debt: "the creditor's remedy is not barred by the statute of limitations period *until the lapse of the full period commencing with the time of the new promise.*" *United States v. Glens Falls Ins. Co.,* 546 F.Supp. 643, 645 (N.D.N.Y. 1982) (emphasis added); A. Corbin, Corbin on Contracts § 214, at 289 (1963). The artificial "look-back" rule urged by Butler is thus inconsistent with the rationale for an acknowledgment's effect as a bar to the statute of limitations.

If, however, the trial court on remand finds that the January 1985 letter acknowledged a preexisting obligation, our conclusion as a matter of law that the statute of limitations would begin to run anew on that date does not resolve an open question as to how far back in time the obligation memorialized in the letter reached. While the judge based his rulings allowing the Griffiths certain credits on a "very loose agreement" between the parties from 1977 to the present, he did not indicate whether the 1985 letter played any role in those determinations. Moreover, those rulings were not based on the legal effect of the

A.2d 499, 500 (D.C.1954); *Bellmore v. Baum,* 68 A.2d 588, 592 (D.C.1949); *Zindler v. Buchanan,* 61 A.2d 616, 618 n. 9 (D.C.1948); *Mitchell v.* *David,* 51 A.2d 375, 379 (D.C.1947); *Lalekos v. Manset,* 47 A.2d 617, 620 (D.C.1946).

letter as an acknowledgment—a question the judge refused to consider—but rather were made by the judge applying equitable considerations.[5] We thus leave to the trial judge to determine the scope of any acknowledgment represented by the 1985 letter.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

---

**5.** Since the Griffiths cited only the doctrine of acknowledgment in support of their claim for credits reaching back more than three years, no question is presented as to the extent of a trial court's equitable power to disregard a statute of limitations in awarding credits under a contract such as was involved here.