*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CV-339

TIGER STEEL ENGINEERING, LLC, APPELLANT,

v.

SYMBION POWER, LLC, *et al.*, APPELLEES.

FILED 11/8/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-8963-15)

(Hon. Maurice A. Ross, Trial Judge)

(Argued February 14, 2018                    Decided November 8, 2018)

*Edmond M. Amorosi*, with whom *Zachary D. Prince* was on the brief, for appellant.

*Erik H. Beard*, with whom *Timothy A. Diemand* was on the brief, for appellees.

Before FISHER and THOMPSON, *Associate Judges*, and FARRELL, *Senior Judge*.

THOMPSON, *Associate Judge*:    Appellant Tiger Steel Engineering, LLC ("Tiger Steel") challenges (1) a March 3, 2017, order of the Superior Court entering summary judgment in favor of appellees Symbion Power, LLC and Symbion Power Services U.S., Inc. (together, "Symbion") on the ground that Tiger

Steel's action for breach of contract was time-barred, and (2) the court's October 4, 2016, order awarding Tiger Steel only $500 in attorney's fees and expenses for its efforts in pursuing a successful motion to compel discovery.

For the reasons stated herein, we hold that Tiger Steel's action on Symbion's failure to pay as Symbion promised in a debt acknowledgment letter is subject to the general three-year limitations period applicable to actions for breach of contract rather than the four-year limitations period applicable to actions for breach of contracts for sale under the Uniform Commercial Code ("UCC"), even though the debt arose out of the parties' contract for the sale of goods.[1] We also agree with the Superior Court's determination that Symbion did not lull Tiger Steel into inaction so as to excuse Tiger Steel's failure to file its Complaint before the end of the three-year limitations period. We therefore affirm the trial court's grant of summary judgment. However, we vacate the October 4, 2016, order and remand for further proceedings with respect to the award of Tiger Steel's reasonable expenses, including attorney's fees, incurred in connection with its motion to compel.

---

[1] We acknowledge Symbion's argument, disputed by Tiger Steel, that the underlying purchase orders were for design services as well as goods, and thus, were not subject to the UCC limitations period, but we need not address that point to resolve this matter.

## I. Factual and Procedural Background

Between December 2008 and March 2009, Tiger Steel, a manufacturer of steel goods used in construction projects, and Symbion, the general contractor for a power plant construction project, executed three purchase orders and a related change order, under which subcontractor Tiger Steel was to fabricate and deliver, and Symbion was to purchase, steel products for the project, at a total price of approximately $3.2 million. Symbion did not pay as agreed, and Tiger Steel stopped performing between May and June 2009 after Symbion failed to honor its requests for payment.

On September 15, 2009, the parties agreed that Symbion would pay Tiger Steel $666,988.60, in addition to "compensation . . . for the current late payment/delay," i.e., interest (at a rate of 6% per annum). In the months that followed, Symbion continued to default on payment. In 2011, Tiger Steel asked Symbion to send it a letter confirming its intent to pay the debt to address concerns expressed by Tiger Steel's auditors. On November 23, 2011, Symbion sent Tiger Steel a letter (the "debt acknowledgment letter") signed by "Group Financial

Director" Mike Madden acknowledging its indebtedness. The debt acknowledgment stated:

> This letter serves as confirmation that Symbion Power LLC owes an amount of USD 707,007.92 [t]o Tiger Steel Engineering.
>
> Such amount is correctly recorded within the Company's financial statements and will be paid in full and in due course.
>
> We will appraise you of any developments periodically and in the meantime will ensure that full settlement is effected soonest.

The acknowledged amount, rounded to $711,008, is the amount that the record shows had been the "final account agreed" to by the parties on September 15, 2009.

Symbion had still not paid any of the acknowledged debt amount when, on September 28, 2013, Symbion sent Tiger Steel a letter that discussed the financial difficulties Symbion had experienced from the collapse of a major project and the four years of arbitration that had followed, and that set out what Symbion called a "final settlement offer." Writing that "[i]t is quite frankly a miracle that Symbion survived" and that the company had "lost a significant amount of money . . . and is still losing money," Symbion stated that it was "in the unavoidable circumstance of

urging [Tiger Steel] to take a 'hair cut' on the original amount due" and offered Tiger Steel $300,000. Tiger Steel rejected that offer. On November 20, 2013, Symbion informed Tiger Steel that it could not "realistically make any improvement on the offer at this time."

From late 2013, through May 2014, Tiger Steel repeatedly reached out to Symbion's CEO Paul Hinks and other Symbion representatives by email, in the expressed hope that Symbion "would come up with a better proposal." Symbion staff informed Tiger Steel on multiple occasions that Hinks was "traveling" and therefore unavailable. On January 8, 2015, Symbion's in-house counsel contacted Tiger Steel regarding "the pending settlement offer." Tiger Steel asserts that it was only at this point that it realized that Symbion would never voluntarily repay the debt it had acknowledged in the November 23, 2011, debt acknowledgment letter. Tiger Steel filed its Complaint in this matter, alleging breach of contract, ten months later, on November 18, 2015.

In its Answer and in subsequent discovery responses, Symbion denied that Madden had actual authority to sign the debt acknowledgment letter. Tiger Steel moved to compel discovery relating to the issue, and the trial court granted Tiger Steel's motion (and Symbion eventually stipulated that it would not contest that

Madden had apparent authority to issue the debt acknowledgment letter). Without seeking input from the parties relating to reasonable attorney's fees expenses and without explaining its reasoning, the court issued an order awarding Tiger Steel $500 in "costs and fees."

After the close of discovery, Symbion filed a motion for summary judgment arguing, *inter alia*, that Tiger Steel's complaint was time-barred. Both sides agreed that the November 23, 2011, debt acknowledgment letter had extended the statutory limitations period. *See* D.C. Code § 28-3504 (2012 Repl.). The parties disagreed, however, as to the length of that extension. Symbion argued that the debt acknowledgment had extended the limitations period only by three years, the limitations period generally applicable to actions for breach of a simple contract (with the result that the November 18, 2015, Complaint was untimely), while Tiger Steel contended that the extension was for four years, the limitation period that applies with respect to claims of breach of a contract for the sale of goods under § 2-275 of the UCC. *See* D.C. Code § 28:2-725 (1) (2012 Repl.) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). Tiger Steel argued in the alternative that Symbion was estopped from raising the statute-of-limitations bar because its conduct had lulled Tiger Steel into inaction.

On March 3, 2017, the Superior Court granted Symbion's motion for summary judgment, concluding that Tiger Steel's claim was time-barred. The court reasoned that "a debt acknowledgment . . . becomes a new contract, with a new [three-year] statute of limitations[,]" that had run by the time Tiger Steel filed suit, and also that the lulling doctrine did not apply. This appeal followed.

## II. Analysis

This court reviews the trial court's grant of summary judgment *de novo*. *Farmer-Celey v. State Farm Ins. Co.*, 163 A.3d 761, 765 (D.C. 2017) (citing *Young v. U-Haul Co.*, 11 A.3d 247, 249 (D.C. 2011)). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Farmer-Celey*, 163 A.3d at 765.

In the absence of material issues of fact, "[e]xpiration of the statute of limitations is a question of law, . . ." which we review *de novo*. *Bailey v.*

*Greenberg*, 516 A.2d 934, 940 (D.C. 1986); *Daniels v. Potomac Elec. Power Co.*, 100 A.3d 139, 143 (D.C. 2014).

### A. The Limitations Period

In our jurisdiction, "decisional law regards an acknowledgment [of a debt] as an implied promise to pay [the] preexisting debt, supported by past consideration in the form of an obligation to honor the old debt." *Griffith v. Butler*, 571 A.2d 1161, 1165 (D.C. 1990) (citations omitted).[2] "[The] effect [of the acknowledgment] on the statute of limitations is to extend the period for enforcing the debt: the creditor's remedy is not barred by the statute of limitations period until the lapse of the full period commencing with the time of the new promise."[3] *Id.* (internal quotation marks and italics omitted).

---

[2] *See also Hayden v. International Banking Corp.*, 41 F.2d 107, 109 (D.C. Cir. 1930) ("If a debtor simply acknowledges an old debt, the law implies from that simple acknowledgment a promise to pay it; for which promise the old debt is a sufficient consideration.") (quoting *Ruppert v. Beavans*, 2 App. D.C. 298, 302 (D.C. Cir. 1894)).

[3] This rule appears to assume that the new promise is "immediately performable," such that there is an immediate breach if the debt is not paid contemporaneously with the new promise being made. 3 Corbin on Contracts § 9.10 at p. 281 (rev. ed. 1996), ("The new statutory period is counted only from the breach of the new promise.") (footnote omitted). Symbion's express promise in the November 23, 2011, debt acknowledgment letter was to pay "in due course"

(continued…)

D.C. Code § 28-3504 (2012 Repl.), which we applied in *Griffith*, provides in pertinent part that:

> In an action upon a simple contract, an acknowledgement [sic], or promise, by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations or to deprive a party of the benefit thereof unless the acknowledgement [sic], or promise, is in writing, signed by the party chargeable thereby.

We said in *Griffith* that the acknowledgment of a debt "is enforceable as a new promise, *and the creditor's rights are measured by it, not the old promise*." 571 A.2d at 1165 (italics added). Tiger Steel acknowledges that statement, but asserts that what are measured by the new promise are matters such as the sum owed and the payment terms, not the length of the limitations period. Emphasizing that *Griffith* does not address what limitations period applies to enforcement of the new promise, Tiger Steel again urges that the full limitations period that commenced upon the new promise set out in the November 23, 2011, debt acknowledgment

---

(…continued)

and "soonest," but Tiger Steel has not suggested that the vagueness of the due date means that the limitations period began to run at some date after November 23, 2011. It agrees that "the date of the acknowledgment is the date from which the statute of limitations begins to run again."

letter is not the three-year limitations period established by § 12-301 (7),[4] but instead the four-year limitations period applicable "to actions for breach or contracts for sale governed by [D.C. Code] § 28:2-725," D.C. Code § 12-301; *see also* D.C. Code § 28:2-725 (1) (2012 Repl.) ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.").

> The statutory period that is applicable against the new right of action depends upon the character and form of the new promise and the provisions of the various state statutes. It is not determined by the character and form of the original transaction . . . . If the new promise is merely implied from an acknowledgment . . ., the period is that which the statute provides for implied contracts. This is true, even though the original transaction was a contract under seal.

3 Corbin on Contracts § 9.10 at p. 281 (rev. ed. 1996), (footnotes omitted);[5] *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 82, cmt. c, illus. 8 (AM. LAW INST.,

---

[4] Section 12-301 (7) states that "actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: . . . on a simple contract, express or implied — 3 years."

[5] As footnotes in the Corbin treatise acknowledge, however, some courts have held that the limitations period applicable to an action for breach of the new

(continued…)

1981) ("A is indebted to B on a bond under seal, which is barred by a twelve-year statute of limitations, and makes a promise to B in a signed writing not under seal to pay the debt. The statute of limitations for debts under written contracts not under seal is six years. An action on the subsequent promise is subject to the six-year statute.").

The Williston treatise summarizes the general rule as follows: "[T]he indebtedness is . . . extended for the period allowed by the law for the enforcement of simple, informal contracts, *unless the natural construction of a statute governing the matter leads to a different result*." 4 Williston on Contracts, § 8:45 at 720 (4th ed. 2008) (italics added) (footnote omitted). Although the Williston treatise states that "courts should, and perhaps most courts would, follow the Restatement drafters' lead" and apply the "simple, informal contract statute of limitations to the new promise" since "the plaintiff is suing on the new promise," he also notes that "[l]argely because of the confusion that existed, . . . a construction has been put upon particular statutes which . . . allows the

---

(…continued)

promise is the same as the limitations period that applied to an action to enforce the old promise. *See, e.g.*, *Ingram v. Harris*, 5 S.E.2d 624, 626 (Va. 1939) ("[I]t is perfectly clear, we think, that after a new promise the statute of limitations began anew and ran for the period applicable to the original contract.").

enforcement of the claim during a new period equal to that allowed by the law for the enforcement of the original indebtedness." *Id.* at 721, 722.[6]

Tiger Steel underscores the comments in the secondary sources about deference to "the provisions of the various state statutes."[7] 3 Corbin, § 910 at 281; 4 Williston § 8:45 at 720. It argues that the most natural reading of our debt acknowledgment statute, § 28-3504, is that "the same limitations period will apply upon acknowledgment as applied to the underlying action." Tiger Steel highlights that § 28-3504 refers to "tak[ing] the case out of the operation of *the* statute of limitations" (italics added) and that the case law also refers to the creditor's remedy not being barred by "the" statute of limitations period.[8] It argues that in

---

[6] Thus, "if the statute of limitations allowed 10 years, for example, for the enforcement of the original obligation, a new promise would start a new period of 10 years, although the period allowed for the enforcement of a simple, informal contract obligation might be considerably shorter." *Id*. at 721 (footnote omitted).

[7] Tiger Steel also cites a number of cases in which courts and parties assumed that the UCC § 2-725 statute of limitations applied to actions predicated on enforcement of acknowledgments of debts arising out of underlying contracts for sale. As Symbion points out, however, and Tiger Steel does not dispute, in none of the cited cases was the applicable limitations period an issue that the court analyzed.

[8] *Griffith*, 571 A.2d at 1165 (stating that the effect of the debt acknowledgment is that ". . . the creditor's remedy is not barred by *the* statute of limitations period until the lapse of the full period commencing with the time of the new promise" (internal quotation marks omitted) (italics added)); *Hayden*, 41

(continued…)

each case the "the" is a reference to a "singular limitations period": the same period that would be operable but for the debt acknowledgment. If there is any doubt about this, Tiger Steel argues, case law dictates that the issue should be resolved in favor of the longer limitations period. *See In re Estate of Derricotte*, 744 A.2d 535, 541 (D.C. 2000) ("Where two constructions as to the limitations period are possible, the courts prefer the one which gives the longer period in which to prosecute the action . . . . If there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge.").

We are not persuaded by Tiger Steel's linguistic argument. We agree that the "the" in § 28-3504 and the cases denotes a reference to the limitations period that would govern but for the debt acknowledgment, but all that these authorities say is that a written acknowledgment takes the matter out of the operation of the previously running limitations period. They do not say what limitations period will apply to actions that are "take[n] . . . out of [its] operation."[9]

---

(…continued)
F.2d at 110 (referring to a debt acknowledgment "reliev[ing] the bar of *the* statute of limitations" (internal quotation marks omitted) (italics added)).

[9] In that regard, § 28-3504 may be contrasted with UCC Article 3, which "takes sales contracts out of the general laws limiting the time for commencing

(continued…)

We also do not have such doubt about which limitations period applies that we are compelled to rule that the longer limitations period applies. The general rule stated in the secondary sources about what limitations period applies to actions on the new promise contained in a debt acknowledgment — that the "simple, informal contract statute of limitations [applies] to the new promise," 4 Williston § 8:45 at 722 — is consistent with our case law that a written debt acknowledgment is enforceable as a new promise and that the creditor's rights are measured by that new promise. *See Griffith*, 571 A.2d at 1165. In addition, we arrive at the same conclusion by way of a different analysis, as follows.

Tiger Steel sued for breach of contract, and it contends that its action is "[a]n action for breach of [a] contract for sale" within the meaning of § 28:2-725. However, what the November 23, 2011, letter acknowledged was the "final account agreed," and, in substance,[10] Tiger Steel's claim is a type of contract action

---

(…continued)
contractual actions" but then "selects a four-year period as the most appropriate to modern business practice." *Hahn v. Atlantic Richfield Co*., 625 F.2d 1095, 1105 (3d Cir. 1980).

[10] *See Green v. Louis Fireison & Assocs*., 618 A.2d 185, 189-90 (D.C. 1992) (explaining that the nature of a complaint "is determined by the relief sought, not by its label or caption.") (internal quotation marks omitted); *see also*

(continued…)

that the case law refers to as an action in "*assumpsit . . .* for money due upon an account stated."[11]  An action in "assumpsit" is "[a]n action based on the defendant's breach of an implied promise to pay a debt to the plaintiff." *Assumpsit*, BLACK'S LAW DICTIONARY (10th ed. 2014).[12]  An "account stated" is "[a] balance that parties to a transaction . . . agree on, either expressly or by

---

(…continued)
*Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 549 n.5 (D.C. 1981) ("The legal label for relief sought is not controlling.").

[11]  *Kennaird v. Jones*, 50 Va. (9 Gratt.) 183, 184 (Va. 1852); *see also Ruppert*, 2 App. D.C. at 302 ("An acknowledgment . . . will revive the original cause of action, . . . [which] . . . may amount to a new *assumpsit* for which the old debt is a sufficient consideration[.]") (internal quotation marks omitted).

We are not the first to recognize that an action on a debt acknowledgment can be equivalent to an action on an account stated. *See Moorman Mfg. Co. of California v. Hall*, 830 P.2d 606, 608 (Or. Ct. App. 1992) (Rossman, J., dissenting in part but concurring in relevant part) ("The four-year Statute of Limitations that applies to contracts for the sale of goods [under the UCC] is inapplicable to plaintiff's account stated claim, because the claim is based on a new and separate contract that was created when defendants acknowledged their indebtedness to plaintiff.").

[12]  See also 3 Corbin on Contracts § 9.5 at 259 (rev. ed. 1996), ("Originally, the rule enforcing new promises to pay debts . . . was . . . pursuant to the writ known as *indebitatus assumpsit* or general assumpsit."); RESTATEMENT (SECOND) OF CONTRACTS, § 82 (AM. LAW INST. 1981), *Historical note:  types of indebtedness* (noting that the rule about the binding nature of a promise to pay an antecedent contractual indebtedness "was established in the action of general or indebitatus assumpsit").  An action in assumpsit is a remedy for the recovery of an amount due on a simple contract.  *See Mansfield v. Winter*, 10 App. D.C. 549, 557 (D.C. Cir. 1807).

implication." *Id.* at 21; *see also Exxon Corp. v. International Concrete Corp.*, 335 A.2d 236, 237 (D.C. 1975) ("The essence of . . . an action [on account stated] . . . is that the party charging and the party to be charged have agreed or struck a balance from which an obligation to pay can be implied." (citing *First Nat'l Realty Corp. v. Impact Advert., Inc.*, 206 A.2d 579, 580 (D.C. 1965)).[13]

The Corbin treatise describes the nature of an action on an account stated as follows:

> If a claimant renders an account and it is assented to as correct by the other party with an express or implied promise to pay, an action may be maintained on the promise. The account stated is a new, independent cause of action *superseding* and merging *the antecedent causes of action represented by the particular items included in the computation.*
>
> . . .
>
> *An action on an account stated is not an action for the breach of a contract for sale.* Rather, it is an action to enforce a subsequent promise to pay an account.

---

[13] *See also Eimco-BSP Serv. Co. v. Valley Inland Pac. Constructors, Inc.,* 626 F.2d 669, 671-72 (9th Cir. 1980) ("An account stated is an agreement between persons having previous monetary transactions that fixes the amount due in respect to such transactions and promises payment. As such, an account stated is itself an independent contract that is enforceable without regard to the underlying transactions on which it is based." (citations omitted)).

*See* 13 Corbin on Contracts § 72.4 (2), at 466-67, 473 (rev. ed. 2003) (italics added) (footnotes omitted); *see also* 3 Corbin on Contracts § 9.2 at p. 244 (rev. ed. 1996) (noting that "[o]ne of the very frequent illustrations of [a new promise to pay an antecedent debt that gives the creditor the full statutory period in which to sue] is the 'account stated'").

Citing the Corbin treatise, the Supreme Court of Michigan has held that an action on an account stated is not governed by the four-year limitations period for actions on contracts for sale prescribed in Article 2 of the UCC. *See Fisher Sand & Gravel Co. v. Neal A Newbie, Inc.*, 837 N.W.2d 244 (Mich. 2013).

> Because the language of [UCC § 2-725] plainly states that it only applies to actions on the sale of goods, and an action on an account stated is an action on a promise to pay a certain amount that has nothing to do with any underlying sales transactions, the Court of Appeals erred by . . . concluding that the four-year limitations period applies because the nature of the underlying transactions is immaterial.

*Id.* at 254-55 (footnote omitted). Instead, the Michigan court held, "it being established that an account stated is a contract based on assent to an agreed balance, an action on an account stated is subject to the . . . limitations period governing general contract actions[.]" *Id.* at 255 (internal quotation marks and footnote omitted). We find the Michigan court's analysis persuasive.

The November 23, 2011, debt acknowledgment letter "revive[d]"[14] and promised to pay the amount ($711,008, representing $666,988.60 plus 6% interest) that the record shows was the "final account agreed" to by the parties on September 15, 2009, upon Symbion's computation of the final costs for each purchase order and Tiger Steel's "OK."  In response to a Tiger Steel request for admission, Symbion admitted that this amount was recorded in its accounting records as a liability and indebtedness to Tiger Steel, and Tiger Steel sued for the $666,988.60 amount plus interest and fees in its Complaint.  Following the analysis in *Fisher Sand*, we conclude that in suing on the debt acknowledgment letter, Tiger Steel in effect sued on an account stated and, for that reason, its suit was subject to the limitations period governing general contract actions under §12-301 (7).  *See Fisher Sand & Gravel Co.*, 837 N.W.2d at 255.  Thus, the trial court did not err in determining that the applicable limitations period was three years.

### B.  Lulling

Tiger Steel argues in the alternative that even if the limitations period was three years, the trial court erred in determining that no genuine dispute of material

---

[14]  *Ruppert*, 2 App. D.C. at 302 (internal quotation marks omitted).

fact existed as to whether Symbion "lulled" Tiger Steel into inaction that equitably tolled the running of the limitations period that commenced on the date of the debt acknowledgment.[15]  Specifically, Tiger Steel cites correspondence from Symbion in mid-2014 that "left open the possibility that Symbion would honor its commitments" and a communication as late as January 2015 that "indicated that payment was still a possibility although not at the agreed amount."  Tiger Steel asserts that even after Symbion told Tiger Steel that Symbion lacked funds to pay the full agreed-upon amount, Symbion "continued to lull Tiger Steel into complacency by delaying [Tiger Steel's] requests to speak to Symbion's CEO personally, and suggesting that Symbion was rethinking its offer."

In the District of Columbia, "a defendant cannot assert the bar of the statute of limitations[] if it appears the defendant has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *Daniels*, 100 A.3d at 142 (internal quotation marks and brackets in

---

[15]  Tiger Steel does not identify which material facts purportedly remain in dispute.  Instead, it appears to argue that the reasonableness of its conduct (the facts of which do not appear to be in controversy) remains at issue.  Where the facts are undisputed, the question of reasonableness is for the court.  *Cf. Greycoat Hanover F St. Ltd. P'ship v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 768 (D.C. 1995) ("Reasonableness will often be a question for the jury, but where, as here, the evidence as to timing is uncontradicted, reasonableness of the delay may become a question of law.").

original omitted). To establish lulling, the plaintiff must show that the defendant engaged in affirmative misconduct; "mere silence or failure to disclose" is generally not enough. *Id.* (internal quotation marks and alterations in original omitted). In addition, and importantly in this case, "[i]f ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute." *Interdonato v. Interdonato*, 521 A.2d 1124, 1135 (D.C. 1987) (internal quotation marks omitted).

The Superior Court determined that the documentary evidence showed that by 2013, a year before the three-year limitations period ran in November 2014, "it was clear . . . that the only amount that Symbion would pay was $300,000, far below the debt," and that Tiger Steel "knew or reasonably should have known at that point that [it was] not going to recover" under the terms of the debt acknowledgment letter. We agree with that determination. Tiger Steel has not identified any affirmative conduct by Symbion after Symbion sent Tiger Steel the September 28, 2013, letter describing Symbion's financial difficulties and offering Tiger Steel the "haircut" sum of $300,000 as a "final settlement," "that could have caused Tiger Steel reasonably to believe that Symbion would pay the full debt acknowledged in the November 23, 2011, letter. In November 2013, Symbion reaffirmed that it would not pay the full amount of debt it had acknowledged. The

record then shows that Symbion ignored Tiger Steel's repeated attempts over four-and-a-half months to contact Symbion's CEO. We cannot find that Symbion "lull[ed] Tiger Steel into complacency" or somehow "suggest[ed] that Symbion was rethinking its [$300,000] offer" by avoiding substantive contact with Tiger Steel for months on end, conduct that was akin to "mere silence." As to CEO Hinks's brief email of May 15, 2014, which Tiger Steel points to as suggesting that Symbion "was rethinking its offer," the email states only that when Hinks was back from travel, he would "give [Tiger Steel] a proper answer." The email cannot reasonably be read to imply that the proper answer would be "revert[ing] back" to the amount Symbion acknowledged in the November 23, 2011, letter.

In short, any act of lulling ceased more than a year before the expiration of the new limitations period. Since there was still "ample time to file suit"[16] within the three-year statutory period after Tiger Steel knew or reasonably should have known that Symbion did not intend to pay its debt voluntarily, the Superior Court properly ruled that the lulling doctrine — a "very narrow equitable exception"[17] —

---

[16] *Interdonato*, 521 A.2d at 1135.

[17] *Daniels*, 100 A.3d at 142 (internal quotation marks omitted).

did not apply, and the court did not err in granting summary judgment in favor of Symbion and against Tiger Steel. We therefore affirm the judgment.

## III.    The Award of Costs and Fees

We turn finally to the issue of attorney's fees and costs. If the trial court grants a motion to compel discovery, then "the court must, *after giving an opportunity to be heard*, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Super. Ct. Civ. R. 37 (a)(5)(A) (emphasis added).[18] We review the trial court's decision respecting attorney's fees for abuse of discretion, *Ill. Farmers Ins. Co. v. Hagenberg*, 167 A.3d 1218, 1232 (D.C. 2017) (citation omitted), and "[w]e have held that a trial court abuses its discretion by: (1) failing to consider a relevant factor; (2) relying upon an improper factor; or (3) failing to provide reasons that support the trial court's conclusions." *In re Estate of McDaniel*, 953 A.2d 1021, 1023–24 (D.C. 2008) (citing *Johnson v. United States*, 398 A.2d 354, 366–67 (D.C. 1979)).

---

[18]    The Superior Court Rules of Civil Procedure were amended on June 1, 2017, long after the trial court granted the motion to compel. The version of Super. Ct. Civ. R. 37 in effect at the time of the court's ruling on the motion to compel is identical to the current version.

We determine that the trial court abused its discretion for two reasons. First, after granting the motion to compel, the trial court failed to afford the parties an opportunity to be heard separately on the issues of attorney's fees and costs as required by Rule 37 (a)(5)(A). Second, the trial court did not provide any reasoning to support its conclusion that only a *de minimis* amount of expense reimbursement was warranted (and, as Tiger Steel asserts, it appears that the court had no record evidence of the actual fees and costs claimed by Tiger Steel). Accordingly, we vacate the trial court's October 4, 2016, award of fees and costs and remand this matter to the Superior Court to determine anew the reasonable expenses to which Tiger Steel may be entitled.[19]

*So ordered.*

---

[19] Symbion's motion to strike Part II of Tiger Steel's reply brief is denied as moot. The motion of Zachary Prince to withdraw as counsel for Tiger Steel for business reasons is granted.