# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 25-7024**

**September Term, 2025**

FILED ON: APRIL 9, 2026

PHANTA U. DARAMY-ANDREWS,
APPELLANT

v.

LIBERTY INSURANCE CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01694)

———

Before: MILLETT and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on January 24, 2025, entering judgment in favor of appellee, be **AFFIRMED**.

\* \* \*

In 2019, a burst pipe flooded Phanta Daramy-Andrews' basement. Ms. Daramy-Andrews held a homeowner's insurance policy from Liberty Insurance Corporation. Ms. Daramy-Andrews alleges that Liberty breached that policy and the implied covenant of good faith and fair dealing when processing her claim for losses caused by the flood. A limitations clause in Liberty's policy requires an insured to sue within a year of the event giving rise to a claim. Because Ms. Daramy-Andrews did not file suit against Liberty until three years after the flood, the district court granted summary judgment to Liberty.

1

Ms. Daramy-Andrews now appeals on three grounds. She argues, first, that the district court abused its discretion by allowing Liberty to amend its answer to include the limitations clause as an affirmative defense. Second, she argues that Liberty lulled her into filing suit beyond the limitations period or otherwise waived the limitations-clause defense. Third, she argues that her claim for breach of the implied covenant is not barred by the limitations clause. Because each of these arguments fails under the plain terms of the contract and settled law, we affirm.

**I**

On April 21, 2019, a pipe burst in Ms. Daramy-Andrews' home. The resulting flood damaged her basement and personal property stored there. At the time, Ms. Daramy-Andrews held a homeowner's insurance policy with Liberty that covered such flood damage. That policy required the insured to prepare a detailed "inventory of damaged personal property" and to submit a "sworn proof of loss" within 60 days of filing a claim. J.A. 90–91. Another policy term created a one-year limitations period for filing suit against Liberty:

> **Suits Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

J.A. 92.

When Ms. Daramy-Andrews timely submitted her insurance claim to Liberty, the company hired a contractor to store her personal property and started an investigation. During an October 2019 deposition conducted as part of that investigation, Ms. Daramy-Andrews and her counsel revealed that she had not inventoried her property as required by the insurance contract. The parties suspended the deposition so Ms. Daramy-Andrews could compile the inventory. In November, Liberty informed Ms. Daramy-Andrews that it had calculated her total losses at around $33,000 and paid her that amount minus adjustments for her deductible, prior payments by Liberty amounting to approximately $26,000, and other items.

Ms. Daramy-Andrews claimed that Liberty had undervalued the damage to her personal property. Liberty reminded Ms. Daramy-Andrews that she would need to submit an inventory of that property and a sworn proof of loss form to claim any additional losses. Liberty then reset the due date for that information to December 12, 2019. At Ms. Daramy-Andrews' request, Liberty granted three further extensions of that deadline. When the last of those extensions expired on February 18, 2020, Liberty wrote Ms. Daramy-Andrews to explain that it would "wait until she is able to complete the required Proof of Loss" to "complete the meeting that was started [in October 2019] and make a final coverage decision[.]" J.A. 536. Ms. Daramy-Andrews neither replied to that letter nor submitted the inventory required by her policy.

More than two years later—and three years after the flood—Ms. Daramy-Andrews sued Liberty in the District of Columbia Superior Court. Liberty removed the case to the United States District Court for the District of Columbia. As relevant here, Ms. Daramy-Andrews' complaint alleges that Liberty (1) breached the insurance contract by low-balling her losses, and (2) breached the implied covenant of good faith and fair dealing during the claims-adjustment process.

2

After discovery, Liberty moved for summary judgment, arguing that the contract's one-year limitations clause barred Ms. Daramy-Andrews' claims. Ms. Daramy-Andrews responded that Liberty had forfeited this argument by failing to plead the limitations clause as an affirmative defense in its answer. Over her objection, the district court allowed Liberty to amend its answer to add that affirmative defense, finding no indication that Liberty had been dilatory or acted in bad faith. To protect Ms. Daramy-Andrews' interests, the district court reopened discovery for additional fact finding on the limitations defense.

After supplemental discovery, the district court granted summary judgment for Liberty on the ground that the claims are time-barred. Ms. Daramy-Andrews timely appealed.

## II

We review for abuse of discretion a district court's decision to grant leave to amend a pleading. *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). We review *de novo* the grant of summary judgment, taking the facts in the record and reasonable inferences from them in the non-movant's favor. *Maydak v. United States*, 630 F.3d 166, 174 (D.C. Cir. 2010).

The district court did not abuse its discretion in granting Liberty leave to amend its answer to assert the limitations-clause defense. With that defense in place, Ms. Daramy-Andrews' claims both fail. No material facts regarding the timing of the flood or lawsuit are in dispute. And Liberty can enforce the limitations clause as a matter of District of Columbia law.

## A

When a party fails to plead an affirmative defense it later relies on in a dispositive motion, that "party may request, and the District Court shall freely give, leave to amend the pleadings" to add that defense "when justice requires." *Harris v. Secretary, United States Dep't of Veterans Affs.*, 126 F.3d 339, 345 (D.C. Cir. 1997); *see* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."). As the Supreme Court has explained, in the absence of a countervailing reason like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.[,]" district courts should grant leave to amend "freely[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting FED. R. CIV. P. 15(a)(2)); *see Harris*, 126 F.3d at 345.

Applying this settled law, the district court granted Liberty leave to amend its answer. *See* Min. Order (May 3, 2024). The district court recognized that Liberty's proposed amendment came "after discovery had closed," but concluded that Liberty was "not dilatory" because it sought leave to amend "within a week" of Ms. Daramy-Andrews flagging its failure to plead the time-bar defense. *Id.* The district court further concluded that Liberty's delay was not "the result of bad faith" because Liberty's behavior during discovery—including questioning Ms. Daramy-Andrews "about the delay in bringing suit in [a] deposition"—showed that Liberty's failure to plead the time-bar defense was simply an "oversight[.]" *Id.* Finally, the district court concluded that any prejudice to Ms. Daramy-Andrews from the late amendment would "be ameliorated by briefly re-

3

opening discovery if she so requests." *Id.* Discerning no other basis to withhold its leave, the district court reasonably applied the presumption favoring amendment.

Ms. Daramy-Andrews' arguments do not demonstrate an abuse of discretion.

First, Ms. Daramy-Andrews disputes how the district court calculated the length of Liberty's delay in seeking amendment of its answer. But the math is irrelevant because the district court agreed that Liberty's delay weighed *against* amendment. The court simply concluded that delay alone did not foreclose amendment under the circumstances of this case. *See* Min. Order (May 3, 2024) ("Although the Court must weigh that Defendant moved to [amend] * * * only after discovery had closed, that is not necessarily dispositive."). That was correct. "[W]e have consistently held that delay, without a showing of prejudice, is not a sufficient ground for denying the motion." *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999); *see Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 991 (D.C. Cir. 1998) (District court did not abuse its discretion in allowing defendant "to amend its answer to add the statute-of-limitations defense" just "weeks before trial" and after "discovery was closed" where plaintiff only "conclusorily claims it was prejudiced by the delay[.]").

Second, Ms. Daramy-Andrews argues the district court should have "infer[red]" that Liberty "intentionally concealed the affirmative defense" in an effort "to obtain a tactical advantage" because Liberty had asked questions relevant to the defense during pre-amendment discovery. Opening Br. 21, 23. That is one possible inference from the record. But the record also supports the district court's alternative reading: Liberty mistakenly omitted the limitations defense from its answer, conducted discovery as if it had pleaded that defense, then "moved to amend within a week of Plaintiff bringing the oversight to its attention." Min. Order (May 3, 2024). We have no basis, on abuse-of-discretion review, to override the district court's factual inference. *See Harris*, 126 F.3d at 344 ("The District Court possesses sufficient familiarity with the circumstances of a case to exercise its discretion wisely and determine whether any of the five enumerated *Foman* factors * * * apply in a given case.").

Third, Ms. Daramy-Andrews argues that the district court was wrong that reopening discovery would "ameliorate[]" any prejudice to her. Min. Order (May 3, 2024). But the only form of prejudice Ms. Daramy-Andrews identified before the district court was that she "would have conducted discovery" into the limitations defense had she known about it earlier. *See* J.A. 249–253. That prejudice was cured by reopening discovery.

Before us, Ms. Daramy-Andrews asserts that she suffered two additional forms of prejudice. Of course, the district court could not have abused its discretion by failing to consider arguments it never heard, so these arguments are forfeited. *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007); *see also Dahman v. Embassy of Qatar*, 815 F. App'x 554, 559 (D.C. Cir. 2020) (per curiam). They also lack merit.

To start, Ms. Daramy-Andrews contends that the supplemental discovery was prejudicial because she "incur[red] unnecessary legal fees" and "an additional financial burden" as a result. Opening Br. 20, 24. Having affirmatively argued that supplemental discovery was necessary, and having requested that discovery when given the option, Ms. Daramy-Andrews cannot claim as

4

prejudice the district court's decision to give her that for which she asked. Anyhow, amending a pleading will always "occasion some degree of delay and additional expense," so those costs alone are not "independently sufficient grounds for declining to grant leave." *Barkley v. United States Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 39 (D.C. Cir. 2014). Nor has Ms. Daramy-Andrews shown that supplemental discovery imposed any more costs than if Liberty had included the affirmative defense in its original answer and Ms. Daramy-Andrews had engaged with it in the initial discovery process.

Next, Ms. Daramy-Andrews argues she was prejudiced because she gave a bad answer in a pre-amendment deposition that was not stricken from the record. Opening Br. 24. But Ms. Daramy-Andrews never moved to strike that answer. Nor has she explained what helpful answer she would have given if "better prepared[.]" *Id.* at 22. Regardless, the point of reopening discovery was to allow Ms. Daramy-Andrews to correct or supplement the record as necessary in light of Liberty's added defense. Ms. Daramy-Andrews' failure to do so is not evidence that the amendment caused her "*undue* prejudice[.]" *Foman*, 371 U.S. at 182 (emphasis added).

In sum, the district court's reasoned and factually grounded decision to allow Liberty to amend its complaint was not an abuse of discretion.

**B**

The district court also correctly concluded that Ms. Daramy-Andrews' claims for breach of contract and for breach of the implied covenant of good faith and fair dealing were time barred by the policy's one-year limitations clause. No material facts are in dispute: All agree that the flood occurred on April 21, 2019 and that Ms. Daramy-Andrews did not file suit until April 20, 2022—three years later. Likewise, the parties agree that Liberty's policy contained a one-year time limit on filing suit; Ms. Daramy-Andrews did not comply with that clause; and District of Columbia law enforces contractual limitations clauses.

The only issue, then, is whether the limitations clause is unenforceable for some extrinsic reason. Because no such reason exists, we affirm the grant of summary judgment to Liberty.

**1**

Ms. Daramy-Andrews argues that the limitations clause did not bar her breach of contract claim for two reasons: (1) Liberty lulled her into missing the deadline to sue, and (2) Liberty waived its limitations-clause defense. Neither argument succeeds.

District of Columbia law may estop a time-bar defense if an insurer "lull[s] the plaintiff into inaction and thereby permit[s] the limitation [period] * * * to run[.]" *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (quotation marks omitted). That "narrow[]" rule, however, applies only if the insurer acted in a manner "that amounted to an affirmative inducement * * * to delay bringing" suit. *Id.* (quotation marks omitted). Affirmative misconduct is required. *Tiger Steel Eng'g, LLC v. Symbion Power, LLC*, 195 A.3d 793, 802 (D.C. 2018). For example, even a "verbal promise" to pay "with an implied request for forbearance on the part of" the plaintiff does not amount to lulling where the defendant did not expressly "agree[] to waive the statute" of limitations or "ask [the plaintiff] to refrain from bringing suit." *Grass v. Eiker*, 135 A.2d 153, 154 (D.C.

5

1957). Likewise, estoppel is particularly unlikely to result where the claimant has "retained legal counsel" and where the alleged inducement occurred "well before the limitations period expired[.]" *Bailey*, 516 A.2d at 939.

Ms. Daramy-Andrews contends that Liberty's March 2020 letter led her to believe that the limitations clause had been suspended. But Liberty's letter said only that its "*investigation*" into Ms. Daramy-Andrews' claim for supplemental personal property losses was "suspended" while she "compl[ied] with the conditions of the policy and complete[d] the signed proof of loss." J.A. 215 (emphasis added). The letter made no affirmative representation that the *limitations clause* for filing suit was suspended. *See Bailey*, 516 A.2d at 937; *Tiger Steel*, 195 A.3d at 802. Also, Liberty sent that letter six weeks before the limitations period ran, leaving ample opportunity for Ms. Daramy-Andrews—who was then represented by counsel—to file suit on time.[*]

Ms. Daramy-Andrews' argument that Liberty waived its limitations-clause defense similarly fails. In the District of Columbia, "[t]he general rule is that an insurance company is not deemed to have waived a contractual limitations period * * * unless the company has conceded liability and some discussion of a settlement offer has occurred." *Bailey*, 516 A.2d at 938–939. That rule exists so that insurance companies cannot "avoid payment of claims by entering into prolonged negotiations and then withdrawing after the twelve-month limitation period has passed[.]" *Roumel v. Niagara Fire Ins. Co.*, 225 A.2d 658, 660 (D.C. 1967). But "the mere pendency of a claim, without a concrete indication that it could be settled amicably," does not effect a waiver. *Bailey*, 516 A.2d at 939.

The district court found no record basis for concluding that Liberty discussed a settlement in terms that could have waived its limitations-clause defense. Liberty paid Ms. Daramy-Andrews based on its best estimate of her losses in November 2019. Liberty gave Ms. Daramy-Andrews an opportunity to provide evidence of higher losses, but it never promised that it would pay more. In fact, Liberty told Ms. Daramy-Andrews directly that her compliance with the policy terms would simply allow Liberty to reopen its investigation. That alone does not amount to "a concrete indication" that Ms. Daramy-Andrews' claim for additional losses would be "settled amicably[.]" *Bailey*, 516 A.2d at 939. In addition, even had Liberty's communications with Ms. Daramy-Andrews amounted to settlement negotiations, it was Ms. Daramy-Andrews—not Liberty—who prolonged those negotiations and then withdrew.

Accordingly, the district court correctly concluded that Liberty did not waive, and was not estopped from asserting, its limitations-clause defense. Because Ms. Daramy-Andrews filed suit two years after the limitation period had run, that defense entitled Liberty to judgment as a matter of law on Ms. Daramy-Andrews' breach of contract claim.

---

[*] Ms. Daramy-Andrews also argues that she was lulled into sleeping on her rights because Liberty processed two earlier, unrelated insurance claims without mentioning the limitations clause. That is neither here nor there. This suit challenges only Liberty's treatment of her 2019 insurance claim. Plus, Ms. Daramy-Andrews never sued over those earlier claims, so Liberty never had any occasion to mention the limitations period.

6

As for Ms. Daramy-Andrews' claim for breach of the implied covenant of good faith and fair dealing, she argues that Liberty "concede[d]" that this claim is not barred by the limitations clause because its motion for summary judgment "did not state * * * that the contractual statute of limitations applie[d]" to the implied covenant. Opening Br. 17. Not so. Liberty argued that both of her "*claims*" are barred by the limitations clause and that the clause applies to "*any lawsuit* against" Liberty on the insurance contract. J.A. 285 (formatting modified).

On the merits, Ms. Daramy-Andrews contends that she timely filed because Liberty's "bad faith actions * * * occurred during and after" her communications with Liberty, not at the time of the flood. Opening Br. 17. But even if Ms. Daramy-Andrews were right about when her claim accrued, it would still be time barred: She asserts that the relevant Liberty "actions occurred between March 2020 and July 2020[,]" *id.*, which was roughly two years before she filed suit.

Finally, Ms. Daramy-Andrews suggests that her implied-covenant claim is timely because "the District of Columbia suspended all statutes of limitation until 2021" during the COVID-19 pandemic. Opening Br. 17. But the relevant order from the D.C. Superior Court's Chief Judge applied only to "statutory and rules-based time limits in the D.C. Code, and the Superior Court Rules[.]" *Amended Order*, D.C. Superior Ct. (July 29, 2022), https://perma.cc/3B6R-GFUZ. The order did not apply to privately contracted limitations periods. *See Gardner v. Erie Ins. Co.*, 639 F. Supp. 3d 135, 143 (D.D.C. 2022).

For those reasons, the district court correctly held that the limitations clause barred Ms. Daramy-Andrews' implied-covenant claim.

### III

For the foregoing reasons, we affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk